KENNETH B. WILSON, State Bar No. 130009
        kwilson@perkinscoie.com
STEFANI E. SHANBERG, State Bar No. 206717
        sshanberg@perkinscoie.com
ESHA BANDYOPADHYAY, State Bar No. 212249
        ebandyopadhyay@perkinscoie.com
SARAH E. PIEPMEIER, State Bar No. 227094
        spiepmeier@perkinscoie.com
PERKINS COIE LLP
180 Townsend Street, Third Floor
San Francisco, California  94107-1909
Telephone:     (415) 344-7000
Facsimile:     (415) 344-7050

Attorneys for Plaintiff CHIP-MENDER, INC.
and Counterclaim-Defendants CHIP-MENDER, INC.
and TIMOTHY M. RUSSO

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CHIP-MENDER, INC.,<br>a California corporation,<br><br>                  Plaintiff,<br><br>   v.<br><br>SHERWIN-WILLIAMS COMPANY,<br>a Delaware corporation,<br><br>                Defendant. | CASE NO.  05-CV-3465 (MEJ)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO BIFURCATE AND STAY COUNTERCLAIMS**<br><br>Date:       December 1, 2005<br>Time:      10:00 a.m.<br>Before:   Hon. Magistrate Judge James<br>Location:  Courtroom B, 15th Floor |
| AND RELATED COUNTERCLAIMS | |

# TABLE OF CONTENTS

**Introduction** ................................................................................................................ 1

**Statement of Facts** ...................................................................................................... 2

    I.      DEFENDANT AND COUNTERCLAIM-PLAINTIFF SHERWIN-
           WILLIAMS ........................................................................................ 2

    II.     PLAINTIFF AND COUNTERCLAIM-DEFENDANT CHIP-MENDER
           AND COUNTERCLAIM-DEFENDANT TIMOTHY M. RUSSO ................ 3

    III.    BACKGROUND OF THE DISPUTE .................................................... 4

**Argument** .................................................................................................................. 5

    I.      EACH COUNTERCLAIM ASSERTED BY SHERWIN-WILLIAMS
           FAILS TO STATE A CLAIM ON WHICH RELIEF MAY BE
           GRANTED AND MUST THEREFORE BE DISMISSED............................ 5

           A.    Legal Standard for Motion to Dismiss for Failure to State a Claim. .... 5

           B.    The Declaratory Relief Counterclaims Against Russo Must Be
                Dismissed. ......................................................................................... 6

           C.    Sherwin-Williams Has Failed to Properly State a Claim for
                Sherman Act § 2 Attempt to Monopolize in Its Third and Fourth
                Counterclaims...................................................................................... 6

                1.    Sherwin-Williams Has Not Alleged and Cannot Allege that
                      Chip-Mender has a Dangerous Probability of Achieving
                      Monopoly Power. ..................................................................... 7

                2.    Sherwin-Williams Does Not Even Attempt To Allege
                      Antitrust Injury. ...................................................................... 9

                3.    In Its Third Counterclaim, Sherwin-Williams Has Failed to
                      Sufficiently Allege Fraud Under the Heightened *Walker
                      Process* Standards. ................................................................ 10

                4.    Sherwin-Williams Has Failed to Sufficiently Allege that
                      Chip-Mender Has Engaged in Sham Litigation. ..................... 12

                5.    At a Minimum, The Antitrust Claims Must Be Dismissed
                      As to Russo.............................................................................. 13

           D.    Sherwin-Williams Has Failed to Properly State a Claim for Unfair
                 Competition Under § 17200, and No Facts Exist to Support Such a
                 Claim. ............................................................................................... 14

                1.    Sherwin-Williams Has Failed to Properly State a Claim for
                      Unfair Competition Under § 17200 Against Any Party.......... 15

                2.    Sherwin-Williams Has Failed to Properly State a Claim for
                      Unfair Competition Under § 17200 Against Russo. .............. 16

E.  Sherwin-Williams Has Failed to Properly State a Claim for False or Misleading Statements Under § 17500, and No Facts Exist to Support Such a Claim.................................................... 16

1.  Chip-Mender's Licensing Proposals to Sherwin-Williams Do Not Qualify as "Advertisements"...................................... 17

2.  Chip-Mender's Advertisements on Its Web Site Are Not Untrue or Misleading. ............................................. 17

3.  Sherwin-Williams Has Failed to Properly State a Claim for False or Misleading Statements Under § 17500 Against Russo. ................................................................. 18

F.  Sherwin-Williams Has Failed to Properly State a Claim for Deceptive Trade Practices Under Ohio Revised Code § 4165 *et seq.*, and No Facts Exist to Support Such a Claim. ............................. 19

1.  Sherwin-Williams Has Failed to Properly State a Claim for Deceptive Trade Practices Under Ohio Revised Code § 4165. ................................................................. 19

2.  Sherwin-Williams has Failed to Properly State a Claim for Deceptive Trade Practices Under Ohio Revised Code § 4165 Against Russo. ................................................. 20

II.  IN THE ALTERNATIVE, THE COURT SHOULD BIFURCATE AND STAY DISCOVERY RELATING TO SHERWIN-WILLIAMS' COUNTERCLAIMS FOR AFFIRMATIVE RELIEF PENDING THE RESOLUTION OF THE PATENT CLAIMS ON WHICH THEY ARE PREDICATED. .................................................... 20

A.  Legal Standards ................................................. 20

B.  Sherwin-Williams' Counterclaims Should Be Bifurcated and Stayed Because They Are Predicated on Resolution of the Patent Case, and May Be Rendered Moot by Such Resolution. ................... 21

C.  Sherwin-Williams' Counterclaims Should Be Bifurcated and Stayed to Avoid Unnecessary Expenditure of Resources. ................. 22

D.  Granting Bifurcation Avoids the Prejudice of Delay. ........................ 23

E.  Granting Bifurcation Avoids Confusion of the Issues. ....................... 23

F.  Granting Bifurcation Serves Judicial Economy. ............................... 23

G.  Granting Bifurcation Will Not Prejudice Sherwin-Williams. ............. 25

**Conclusion** .................................................................. 25

MEMO IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, BIFURCATE
Case No. 05-CV-3465 (MEJ)

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
    960 F.2d 1020 (Fed.Cir. 1992) ................................................................... 16

4

*American Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal &*
    *Prof'l Publications, Inc.*, 108 F.3d 1147 (9th Cir. 1997) ............................... 9

5

*ASM Am., Inc. v. Genus, Inc.*,
    2002 WL 24444 (N.D.Cal. Jan. 9, 2002) ....................................... 21, 23, 24

6

*Associated Gen. Contractors of Calif., Inc. v. Calif. State Counsel of*
    *Carpenters*, 459 U.S. 519 (1983) .................................................................. 5

7

8

*Atari Games Corp. v. Nintendo of Am., Inc.*,
    897 F.2d 1572 (Fed. Cir. 1990) .................................................................... 7

9

*Baxter Int'l, Inc. v. Cobe Lab., Inc.*,
    1992 WL 77665 (N.D. Ill. Apr. 7, 1992) .............................................. 21, 24

10

11

*Bernardo v. Planned Parenthood Fed. of Am.*,
    115 Cal.App.4th 322 (Cal.App.4[th] 2004) ............................................. 17, 18

12

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) ......................................................................... 6

13

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977) ................................................................................... 10

14

15

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
    157 F.3d 1340 (Fed. Cir. 1998) ...................................................... 10, 11, 12

16

*California E. Labs., Inc. v. Gould*,
    896 F.2d 400 (9th Cir. 1990) ..................................................................... 13

17

18

*California Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972) ................................................................................... 25

19

*Carlisle Corp. v. Hayes*,
    635 F. Supp. 962 (S.D. Cal. 1986) ............................................................. 21

20

21

*Chromium Indus., Inc. v. Mirror Polishing & Plating Co.*,
    448 F.Supp. 544 (N.D. Ill. 1978) ............................................................... 18

22

*City of Columbia v. Omni Outdoor Advertising, Inc.*,
    499 U.S. 365 (1991) ................................................................................... 12

23

24

*Committee on Children's Television v. General Foods Corp.*,
    35 Cal.3d 197 (1983) ............................................................................ 17, 18

25

*Components, Inc. v. Western Elec. Co.*,
    318 F. Supp. 959 (D. Me. 1970) ................................................................ 23

26

*Conley v. Gibson*,
    355 U.S. 41 (1957) ....................................................................................... 5

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Donnelly v. Reitter & Schefenacker USA Ltd.,*
2002 WL 31418042 (W.D.Mich. Aug. 13, 2002) ...................................................... 24

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,*
365 U.S. 127 (1961) ...................................................................................................... 25

*Electronics For Imaging, Inc. v. Coyle,*
2005 WL 1661958 (N.D.Cal. July 14, 2005) ............................................................ 10

*FMC Corp. v. Manitowoc Co.,*
835 F.2d 1411 (Fed. Cir. 1987) ...................................................................................... 6

*France Mfg. Co. v. Jefferson Electric Co.,*
106 F.2d 605 (6th Cir. 1939) ........................................................................................ 16

*Goodwin v. Anheuser-Busch Cos.,*
2004 WL 3143579 (Cal.Sup.Ct. Dec. 13, 2004) ...................................................... 15

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
896 F.2d 1542 (9th Cir. 1990) ........................................................................................ 6

*Handgards, Inc. v. Ethicon, Inc.,*
601 F.2d 986 (9th Cir. 1979) .................................................................................. 7, 12

*Hewlett-Packard Co. v. GenRad, Inc.,*
882 F. Supp. 1141 (D. Mass. 1995) ...................................................................... 21, 22

*Huntingdon Life Sci., Inc., v. Stop Huntingdon Animal Cruelty USA, Inc.,*
129 Cal.App.4th 1228 (2005) ............................................................................... 14, 15

*Hydranautics v. FilmTec Corp.,*
70 F.3d 533 (9th Cir. 1995) .......................................................................................... 21

*Ileto v. Glock Inc.,*
349 F.3d 1191 (9th Cir. 2003) ........................................................................................ 5

*In re Innotron Diagnostics,*
800 F.2d 1977 (Fed. Cir. 1986) ............................................................... 20, 21, 22

*Kasky v. Nike, Inc.,*
27 Cal.4th 939 (2002) ........................................................................................... 17, 18

*Khoury v. Maly's of Calif.,*
14 Cal.App.4th 612 (1993) .......................................................................................... 14

*K-Lath, Div. of Tree Island Wire (USA), Inc. v. Davis Wire Corp.,*
15 F.Supp.2d 952 (C.D.Cal. 1998) .............................................................................. 13

*Korody-Colyer Corp. v. General Motors Corp.,*
828 F.2d 1572 (Fed. Cir. 1987) .................................................................................... 21

*McGlinchy v. Shell Chem. Co.,*
845 F.2d 802 (9th Cir. 1988) .......................................................................................... 7

*Nobelpharma AB v. Implant Innovations, Inc.,*
141 F.3d 1059 (Fed. Cir. 1998) ............................................................................. 11, 13

- ii -

*Olsen v. Breeze,*
    48 Cal.App.4th 608 (1996) ........................................................................ 14

*Oregon Natural Resources Council v. Mohla,*
    944 F.2d 531 (9th Cir. 1991)................................................................. 12, 13

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
    508 U.S. 49 (1993) ...................................................................................... 7

*Rebel Oil Co., v. Atlantic Richfield Co.,*
    51 F.3d 1421 (9th Cir. 1995)....................................................................... 8

*Saunders v. Superior Court,*
    27 Cal.App.4th 832 (1994) ........................................................................ 14

*Shwarz v. U.S.,*
    234 F.3d 428 (9th Cir. 2000) ....................................................................... 5

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.,*
    983 F.Supp. 1303 (N.D. Cal. 1997) .......................................................... 14

*Townshend v. Rockwell Int'l Corp.,*
    2000 WL 433505 (N.D. Cal. Mar. 28, 2000) ..................................... 6, 8, 13

*Tripp v. United States,*
    406 F.2d 1066 (Ct.Cl. 1969) ..................................................................... 16

*United Mine Workers of Am. v. Pennington,*
    381 U.S. 657 (1965) .................................................................................. 25

*United States v. Topco Assocs., Inc.,*
    405 U.S. 596 (1972) .................................................................................... 1

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.,*
    375 F.3d 1341 (Fed. Cir. 2004) ................................................. 7, 10, 11, 13

*U.S. Bolt Expansion Bolt Co. v. Jordan Indus., Inc.,*
    346 F.Supp. 541, 542 (E.D. Penn. 1972) ............................................ passim

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* .................................. passim
    382 U.S. 172 (1965)

**Statutes**

35 U.S.C. § 286 ........................................................................................... 16

California Business and Professions Code § 17200 *et seq.* ......................... passim

California Business and Professions Code § 17500 *et seq.* ......................... passim

Ohio Revised Code § 4165.02 ............................................................... 19, 20

**Other Authorities**

California Constitution Article II, § 10 .................................................... 14, 15

Sherman-Antitrust Act § 2 ......................................................................... passim

1

**Rules**

2      Federal Rule of Civil Procedure 42 ........................................................................... 20, 24

3      Federal Rule of Civil Procedure 12(b)(6) .................................................................... 5, 12

4      Federal Rule of Civil Procedure 26(d) ........................................................................... 20

5      Federal Rule of Civil Procedure 42(b) ........................................................................... 20

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, BIFURCATE
Case No. 05-CV-3465 (MEJ)

**Introduction**

In the words of the late Supreme Court Justice Thurgood Marshall, "[t]he antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise.  They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms.  And the freedom guaranteed each and every business, no matter how small, is the freedom to compete – to assert with vigor, imagination, devotion, and ingenuity whatever economic muscle it can muster." *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972).

Certainly, when President Benjamin Harrison signed the Sherman Act into law in 1890, he never dreamed that this Act, which was designed to level the competitive playing field for small businesses, would be utilized by a multi-billion dollar corporation like defendant and counterclaim-plaintiff The Sherwin-Williams Company ("Sherwin-Williams") as a tool to squash smaller competitors.  Indeed, Senator John Sherman of Ohio, for whom the Sherman Act is named, would undoubtedly roll over in his grave if he were to learn how Sherwin-Williams is misusing the Act he authored to preserve economic freedom by invoking its provisions against a mom-and-pop business that has sold less than $250,000 in product and has never turned a profit.

Boiled down to basics, Sherwin-Williams' Complaint appears to be that plaintiff and counterclaim-defendant Chip-Mender, Inc. ("Chip-Mender" or "Plaintiff") had the temerity to challenge Sherwin-Williams' willful infringement of Chip-Mender's duly issued patents.  In or around 1999, Timothy M. Russo ("Russo"), Chip-Mender's founder and one of its three part-time employees, invented a unique paint applicator system for use in touching up automotive paint.  As a reward for Mr. Russo's vigor, imagination, devotion, and ingenuity, the U.S. Patent Office awarded him two United States patents, which he assigned to his company Chip-Mender.

Ever since Sherwin-Williams learned of Mr. Russo's patents, Sherwin-Williams has been determined to unabashedly copy the patented inventions.  Sherwin-Williams apparently believes that it can do so without consequence if it just scares Chip-Mender and Mr. Russo enough that Chip-Mender will not pursue its rights.  Its counterclaims are the centerpiece of this scare campaign.

In fact, Sherwin-Williams actually relies on its own monopoly power in the automotive touch-up paint pen market as the basis for bringing its attempted monopolization claims against Chip-Mender and Mr. Russo.  To be clear, what Sherwin-Williams is really claiming is that *if* Chip-Mender prevails on its patent infringement claims against Sherwin-Williams, *then* Chip-Mender will have monopoly power, because at that point, and only at that point, Chip-Mender would actually enjoy *Sherwin-Williams'* monopoly power.  If this twisted logic prevails, then every time a market leader is sued by a small competitor for patent infringement, that market leader would be able to sue its small competitor on a treble damages antitrust claim based upon the economic benefit the competitor would receive if its issued patents are enforced.  The Sherman Act simply does not support such a result.

Not content with directing its scorched earth tactics against Chip-Mender, the undisputed owner of the patents at issue, Sherwin-Williams also targets its antitrust claims personally against Mr. Russo, despite the absence of allegations specific to Mr. Russo.  For good measure, Sherwin-Williams has thrown in unfair competition claims, as well as false advertising and Ohio Deceptive Trade Practices Act claims based upon Chip-Mender's unquestionably truthful statement that its Chip-Mender touch-up paint pens are "patented."

Sherwin-Williams' counterclaims demonstrate on their face that they are without merit. Accordingly, the Court should dismiss with prejudice Sherwin-Williams' counterclaims for violations of § 2 of the Sherman-Antitrust Act, § 17200 Unfair Competition, § 17500 False or Misleading Statements, and the Ohio Deceptive Trade Practices Act.  The Court should also dismiss all of Sherwin-Williams' counterclaims to the extent they are directed at Mr. Russo. Finally, and in the alternative, counterclaim-defendants ask the Court to conserve judicial resources and minimize expense to the parties by bifurcating and staying all proceedings on the anti-trust and related counterclaims, which necessarily must fail if the Chip-Mender patents at issue are held to be valid and enforceable.

## Statement of Facts

## I.    DEFENDANT AND COUNTERCLAIM-PLAINTIFF SHERWIN-WILLIAMS

The Sherwin-Williams Company is a large, multinational corporation with net sales of

MEMO IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, BIFURCATE
Case No. 05-CV-3465 (MEJ)

over 3.5 billion dollars for the first half of this year alone.  [*See* Request for Judicial Notice, Exhibit A at 1.]  Operating profits during that same period total over $300,000,000.  [*Id.*]  In the Automotive Finishes Segment alone (which is the market relevant to this case), Sherwin-Williams netted sales of close to $273,500,000 from January to June 30, 2005.  [*Id.*]

Sherwin-Williams Automotive Finishes Segment operates within an extensive network of company-operated automotive branches in the United States, Canada, Jamaica, Chile, and Peru. [*Id.* at 2.]  As of December 31, 2004, this Segment included consolidated operations in 11 foreign countries and realized income from licensing agreements in 13 foreign countries.  [*Id.*]

Since October 2003, Sherwin-Williams has manufactured, distributed, and sold automotive paint touch-up pens called the Dupli-Color Scratch Fix 2-in-1 Pens ("Dupli-Color Pens") in violation of United States Patent Nos. 6,254,299 and 6,283,663 (the "Chip-Mender Patents").  [*See* The Sherwin-Williams Company's Answer, Defenses and Counterclaims to Chip-Mender, Inc.'s Complaint ("Counterclaims"), ¶ 2.]  Sherwin-Williams does so despite being aware of the Chip-Mender Patents since at least October 2, 2002, when it filed an application for U.S. Patent No. 6,776,548 B2, which specifically lists the Chip-Mender Patents as prior art.  [*Id.*, ¶ 7.]  These pens, which are widely marketed at Sherwin-Williams and other retail stores and on such on-line sites as Amazon.com and Autobarn.com, sell for a list price of approximately $6.00.  [*See* Declaration of Timothy M. Russo in Support of Motion to Bifurcate and Stay Counterclaims ("Russo Decl."), ¶ 14.]

## II.     PLAINTIFF AND COUNTERCLAIM-DEFENDANT CHIP-MENDER AND COUNTERCLAIM-DEFENDANT TIMOTHY M. RUSSO

Chip-Mender is in the business of selling automotive paint touch-up pens that are covered by the Chip-Mender Patents.  [*See* Counterclaims, ¶ 1.]  The Chip-Mender Patents issued in 2001.  [*See* Plaintiff Chip-Mender's Complaint for Patent Infringement ("Complaint"), Exhs. A and B (the '299 and '663 Patents, respectively).]  Russo is named as the inventor on both patents.  [*Id.*]  However, each of the Chip-Mender Patents has been assigned to Chip-Mender. [*Id.*]

Since its inception in September of 2001, Chip-Mender has never had a profitable year. [*See* Russo Decl., ¶¶ 6-7.]  In 2004, Chip-Mender sold a total of 21,481 Automotive Paint

Touch-Up Pens, for a total revenue of $101,078.  [*Id.*, ¶ 6.]  In that year, Chip-Mender's profits amounted to a negative $41,739.  [*Id.*, ¶ 7.]  Chip-Mender sells the Chip-Mender Automotive Paint Touch-Up Pen through the Internet and mailings via the U.S. Postal Service.  [Russo Decl., ¶ 10.]  Chip Mender has at least 15 competitors in the field of automotive touch-up paint pens.  [*Id.*, ¶ 11, Ex. A.]  Moreover, there exist at least 75 substitute products for the Chip-Mender Automotive Paint Touch-Up Pen.  [*Id.*, ¶ 12, Ex. B.]

For the past five years, Russo has been employed full-time as a Certified Used Vehicle Administrator with Toyota Motor Sales, U.S.A., Inc.  [*Id.*, ¶ 4.]  Russo is also the president of Chip-Mender  [*Id.*, ¶ 4.]  Russo does not individually own any right, title or interest in the Chip-Mender Patents, and is not a party to the underlying patent infringement claims.  [*See id.*, §3].

Apart from Russo, and his wife, Holly Russo, Chip-Mender employs only one other person, and all Chip-Mender employees work for Chip-Mender part-time.  [*Id.*, ¶ 8.]

## III.  BACKGROUND OF THE DISPUTE

On May 22, 2003, Chip-Mender informed Sherwin-Williams that it had obtained the '299 Patent and the '663 Patent covering its proprietary automotive touch-up pens and offered Sherwin-Williams a license to the Chip-Mender Patents.  [Counterclaims, ¶ 37, Ex. 4.]  Sherwin-Williams never responded to Chip-Mender's correspondence, and proceeded to launch its Dupli-Color Pen in or around October 2003.  [*Id.*, ¶ 8.]

On April 8, 2005, Chip-Mender made another effort to reach a business resolution with Sherwin-Williams, this time having its counsel write to Sherwin-Williams.  [*Id.*, ¶ 37, Ex. 4.]  Sherwin-Williams denied liability for infringement of the Chip-Mender Patents by its Dupli-Color Pen only after specifically being pushed on its position by counsel for Chip-Mender.  [*See id.*, Ex. 7.]  However, Sherwin-Williams has refused to respond to Chip-Mender's offer to license the Chip-Mender Patents based upon purported concerns that the patents are invalid.  [*Id.*]

Chip-Mender subsequently filed this suit for patent infringement on August 26, 2005.  [*See generally* Complaint]  Shortly thereafter, and before Sherwin-Williams' deadline for responding to the Complaint, the parties exchanged correspondence about the case in which Sherwin-Williams threatened Chip-Mender with antitrust counterclaims.  [Counterclaims, Ex. 7.]

1   In response, Chip-Mender specifically advised Sherwin-Williams that it was a "mom-and-pop

2   shop" with minimal sales.  [*Id.*]  Further, Chip-Mender advised Sherwin-Williams that bringing

3   antitrust claims against Chip-Mender would be frivolous litigation that would waste the

4   resources of the court as well as the parties.  [*Id.*]

5   　　　Despite this warning, Sherwin-Williams filed its Counterclaims, including claims for

6   violation of § 2 of the Sherman Act [*id.*, ¶¶ 62-100] and California and Ohio state unfair

7   competition laws.  [*Id.*, ¶¶ 101-109.]  Each of these claims is dependent upon the resolution of

8   the underlying patent infringement claims.  [*Id.*]

9   　　　　　　　　　　　　　　**Argument**

10  **I.     EACH COUNTERCLAIM ASSERTED BY SHERWIN-WILLIAMS FAILS TO
        STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED AND MUST**

11  **       THEREFORE BE DISMISSED.**

12  　　　**A.     Legal Standard for Motion to Dismiss for Failure to State a Claim.**

13  　　　Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint

14  for failure to state a claim upon which relief can be granted without leave to amend if it appears

15  that the plaintiff can plead no set of facts in support of its claim which would entitle it to relief.

16  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In evaluating a Federal Rule of Civil

17  Procedure 12(b)(6) motion to dismiss, all well-pleaded factual allegations in the complaint are

18  accepted as true and viewed in the light most favorable to the nonmoving party.  *See Ileto v.*

19  *Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003); *see also Shwarz v. U.S.*, 234 F.3d 428 (9th Cir. 2000).

20  However, it is not proper for the court "to assume that [the plaintiff] can prove facts that it has

21  not alleged."  *Associated Gen. Contractors of Calif., Inc. v. Calif. State Counsel of Carpenters*,

22  459 U.S. 519, 526 (1983).

23  　　　While the court's consideration of a motion to dismiss is generally confined to the

24  allegations of the pleadings, when the pleading is accompanied by attached documents, those

25  exhibits are deemed part of the pleading and may be considered in assessing a motion to dismiss.

26  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  In

27  addition, "a document is not 'outside' the [pleading] if the [pleading] specifically refers to the

28  document and if its authenticity is not questioned."  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.

1994) (citation omitted).  Finally, "the Court may consider matters of which it may properly take

judicial notice without converting the motion to dismiss to one for summary judgment."

*Townshend v. Rockwell Int'l Corp.*, 2000 WL 433505, at *3 (N.D. Cal. Mar. 28, 2000) (citations

omitted).

### B.     The Declaratory Relief Counterclaims Against Russo Must Be Dismissed.

It is unclear from the text of Sherwin-Williams' first two counterclaims for a declaratory

judgment for patent invalidity, non-infringement, and unenforceability whether Sherwin-

Williams has directed those claims against Mr. Russo.  There are no allegations in the first two

counterclaims that are directed at Mr. Russo; in fact, he is not even mentioned in those

counterclaims.  Moreover, Mr. Russo is not (and is not alleged to be) an owner of the Chip-

Mender Patents; he is not a party to the underlying litigation; and Sherwin-Williams therefore

cannot and does not allege that it has any case or controversy with Mr. Russo with respect to the

Chip-Mender Patents.  Accordingly, the Court should make clear that Sherwin-Williams cannot

proceed against Mr. Russo on its first two counterclaims by dismissing those claims with

prejudice.[1]

### C.     Sherwin-Williams Has Failed to Properly State a Claim for Sherman Act § 2 Attempt to Monopolize in Its Third and Fourth Counterclaims.

Analysis of the relationship between patent and antitrust laws begins with the

fundamental principle that the mere procurement of a patent does not constitute an antitrust

violation, *FMC Corp. v. Manitowoc Co*., 835 F.2d 1411, 1418 and n.16 (Fed. Cir. 1987), and the

related principle that it is not a violation of the Sherman Act to bring a patent infringement action

in good faith, even if it is ultimately determined in the lawsuit that the patent is invalid.  *Atari

Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1576 (Fed. Cir. 1990); *Handgards, Inc. v.

Ethicon, Inc.*, 601 F.2d 986, 993 (9th Cir. 1979) ("[p]atentees must be permitted to test the

validity of their patents…").

---

[1]  This relief is important to Mr. Russo because, as set forth in further detail in subsequent arguments, all of the other claims against him should also be dismissed.  Because Mr. Russo is not a party to the underlying patent infringement claims, Mr. Russo therefore can be dismissed from this action in its entirety.

Recognizing these principles, Sherwin-Williams seeks to rely on two narrow exceptions, which apply only where the patent at issue was procured by fraud on the Patent Office (*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965) (commonly referred to as a *Walker Process* claim)), or when it is shown by clear and convincing evidence that the patent owner is enforcing a patent in bad faith. *Handgards*, 601 F.2d at 990.

In an action under either or both exceptions, all of the necessary elements of an antitrust claim must be established in addition to the alleged fraud and prior knowledge of invalidity. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). Therefore, since the underlying antitrust claim alleged by Sherwin-Williams is an attempt to monopolize in violation of § 2 of the Sherman Act, Sherwin-Williams must properly plead and prove: (1) a specific intent to control prices or to destroy competition in the relevant market; (2) predatory or anticompetitive conduct; and (3) a dangerous probability of achieving monopoly power. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988). Sherwin-Williams also must allege and prove that it suffered antitrust damages caused by the patentee's enforcement. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1355 (Fed. Cir. 2004).

Sherwin-Williams' Third and Fourth Counterclaims fail to meet these pleading standards.

### 1. Sherwin-Williams Has Not Alleged and Cannot Allege that Chip-Mender has a Dangerous Probability of Achieving Monopoly Power.

Apparently recognizing that Chip-Mender lacks monopoly power, Sherwin-Williams has made no such allegations in its counterclaims. Instead, Sherwin-Williams relies on the assertion that "if Chip-Mender and Mr. Russo are successful in enforcing the fraudulently obtained patents-in-suit, Chip-Mender's control of the relevant market and/or submarkets will likely exceed 50 percent." [Counterclaims, ¶ 76.] This allegation is insufficient to enable Sherwin-Williams' claim to proceed.

As an initial matter, Sherwin-Williams' allegations of market power are logically flawed, as they depend on contradictory findings that Chip-Mender's patents on the one hand were fraudulently procured and invalid and on the other hand are valid and enforceable so as to create

1   a dangerous probability of monopoly power.  However, as noted above, enforcement of a valid

2   patent cannot be held to constitute an antitrust violation.

3          Specifically, Sherwin-Williams alleges that Chip-Mender will attain market power if and

4   only if it prevails on its patent infringement claims against Sherwin-Williams.  [*Id.*, ¶ 76

5   (alleging market power will be acquired "if Chip-Mender and Mr. Russo are successful in

6   enforcing" the patents-in-suit).]  Of course, if Chip-Mender is successful in enforcing its patents

7   through this litigation, the Court must necessarily find the patents to be valid, enforceable, and

8   infringed.  However, for Sherwin-Williams to establish its *Walker Process* claim, it must

9   demonstrate that the patents were procured by fraud, and are therefore unenforceable.  Similarly,

10  for Sherwin-Williams to prevail on its sham litigation counterclaim, the Court must obviously

11  find the underlying patent infringement claim to be without merit.  This inconsistency is

12  sufficient in and of itself to warrant dismissal of this claim with prejudice.

13         In addition, Sherwin-Williams' allegations of market power are legally insufficient.  To

14  prevail on a Sherman Act attempted monopolization claim, a plaintiff must establish that a

15  defendant has a dangerous probability of achieving monopoly power by pleading and proving

16  not only market share, but also entry barriers and the capacity of existing competitors to expand

17  output.  *Townshend*, 2000 WL 433505, at *12 (dismissing patent-based antitrust counterclaim

18  where counterclaimant failed to allege that competitors are unable to expand output), citing

19  *Rebel Oil Co., v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434, 1438-39 and n.10 (9th Cir. 1995).

20  While Sherwin-Williams has made conclusory assertions regarding market share (which will be

21  addressed in more detail below), there are no allegations regarding either entry barriers or the

22  capacity of existing competitors to expand output.[2]  As a result, Sherwin-Williams has not set

23  forth all of the allegations necessary to establish probability of achieving market power.

24  *American Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publications,*

25

26         2  The closest Sherwin-Williams gets to satisfying this element is the conclusory statement that "based on
the lack of alternatives in the relevant market and/or submarkets, which market and/or submarkets is entirely within

27  the scope of the patents-in-suit as asserted by Chip-Mender, there is a dangerous likelihood that Chip-Mender and
Mr. Russo will succeed in their efforts to monopolize the relevant market and/or submarkets if the suit against

28  Sherwin-Williams is allowed to proceed."  [Counterclaims, ¶ 76.]  This statement does not sufficiently allege either
of the required elements.

MEMO IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, BIFURCATE
Case No. 05-CV-3465 (MEJ)

*Inc.*, 108 F.3d 1147, 1154 (9th Cir. 1997) ("neither monopoly power nor a dangerous probability of achieving monopoly power can exist absent evidence of barriers to new entry or expansion").

Even Sherwin-Williams' unsupported allegations of potential future market share are insufficient.  Sherwin-Williams makes no allegations whatsoever regarding Chip-Mender's current market share (presumably because that market share is so small that Sherwin-Williams could not advance allegations that would help its case) and does not identify other competitors or even estimate their market shares.  Instead, Sherwin-Williams contends that Chip-Mender engaged in anticompetitive conduct "by attempting to enforce the patents-in-suit," and further asserts that if and only if Chip-Mender is successful in enforcing the patents-in-suit, "Chip-Mender's control of the relevant market and/or submarkets will likely exceed 50 percent." [Counterclaims, ¶ 76.]  Chip-Mender would agree that there is a "dangerous probability" that it will successfully enforce its patents by establishing that the patents are valid, enforceable, and infringed by Sherwin-Williams.  But such a finding would obviously defeat Sherwin-Williams' patent-based antitrust counterclaims for reasons other than market power.

Each of these grounds is individually sufficient to require dismissal of Sherwin-Williams' antitrust counterclaims.  Together, they form a compelling case for dismissing these claims without leave to amend.

### 2.   Sherwin-Williams Does Not Even Attempt To Allege Antitrust Injury.

Sherwin-Williams' assertion at Paragraph 80 of its Counterclaims that it "has been injured in its business and property … at least to the extent of all of Sherwin-Williams' expenses in countering Chip-Mender's and Mr. Russo's assertion of the patents-in-suit against Sherwin-Williams" is insufficient as a matter of law to satisfy the "antitrust injury" requirement of its two antitrust counterclaims.

To prevail on an antitrust claim under § 2 of the Sherman Act, a plaintiff must specifically plead and prove antitrust injury, "which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.  The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.  It should, in short, be 'the type of loss that the claimed violations

. . . would be likely to cause.'"  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (citation omitted); *see also Unitherm, supra*, 375 F.3d at 1361 ("[a]n antitrust plaintiff must allege more than simply that the defendant's wrongful behavior directly damaged the plaintiff's business, but also that the accused behavior stifled competition.")

Here, the only injury Sherwin-Williams identifies is its own payment of attorneys' fees in defending against Chip-Mender's patent infringement claims.  But this is not an injury to "competition," or the type of injury the antitrust laws were designed to prevent; rather, it is a purely individual economic injury to Sherwin-Williams that has no effect on competition in the relevant market.  Indeed, if attorneys' fees defending a patent infringement suit were sufficient to establish antitrust injury, such injury would always be present in a *Walker Process* or sham litigation case; there is certainly no case authority to support such a position.

Sherwin-Williams' failure to allege a cognizable antitrust injury constitutes yet another reason to dismiss its Third and Fourth Counterclaims.  *See Electronics For Imaging, Inc. v. Coyle*, 2005 WL 1661958 (N.D.Cal. July 14, 2005) (Sherman Act claims dismissed where allegations of antitrust injury "only relate to the injuries suffered by [plaintiff], and do not speak to the manner in which [defendant's] conduct injured competition in the marketplace") (citation omitted).

> **3.**   **In Its Third Counterclaim, Sherwin-Williams Has Failed to Sufficiently Allege Fraud Under the Heightened *Walker Process* Standards.**

A *Walker Process* type claim requires the plaintiff to establish that 1) the defendant is attempting to enforce a patent that has been procured by knowing and willful fraud, and 2) has used its fraudulently obtained patent to restrain competition.  *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1367 (Fed. Cir. 1998).  To satisfy these requirements, a claimant must plead something more than inequitable conduct.  *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069 (Fed. Cir. 1998).  More specifically, the Federal Circuit has held that "[b]ecause severe penalties are usually meted out to the party found guilty of such conduct, technical fraud is generally held *not* to exist unless the following indispensable elements are found to be present: (1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to

1   deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the

2   equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party

3   deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his

4   reliance on the misrepresentation." *Id.* at 1069-70 (citations omitted) (emphasis in original).

5       Moreover, the fraud must be "knowing[] and willful[]" to rise to the level of an antitrust

6   violation. *Walker Process*, 382 U.S. at 177. The phrase "knowing[] and willful[]," as used in

7   this context, "can mean no less than clear, convincing proof of intentional fraud involving

8   affirmative dishonesty, 'a deliberately planned and carefully executed scheme to defraud the

9   Patent Office.'" *C.R. Bard*, 157 F.3d at 1364 (citation omitted). Thus, to establish a *Walker*

10  *Process* violation, the plaintiff must plead and prove "a deliberate misrepresentation, whether by

11  omission or mis-statement, that was intended to and did mislead the examiner into taking

12  favorable action that otherwise would not have been taken." *Id.* at 1365. While "a state of mind

13  so reckless as to the consequences that it is held to be the equivalent of intent" may suffice for

14  these purposes, allegations or evidence that merely rise to the level of gross negligence is

15  insufficient. *Unitherm Food Sys.*, 375 F.3d at 1360 (citation omitted).

16      Here, Sherwin-Williams' sole basis for its claim of such fraud is that although Mr. Russo

17  disclosed the Pentel pocket correction pen as prior art, he failed to disclose the construction of the

18  pen, the viscosity of the liquid in the pen, and the "fact" that the liquid in that pen constituted

19  "paint." [Counterclaims, ¶¶ 69-72.] Counterclaim-defendants are aware of no authority for the

20  proposition a patent holder disclosing a reference to the Patent Office is guilty of *Walker Process*

21  level fraud solely based on failure to further disclose additional details with respect to the reference.

22      More fundamentally, however, Sherwin-Williams has failed to sufficiently plead intent to

23  deceive, since its allegations in this respect suggest that Chip-Mender may merely be guilty of

24  "gross negligence." [*Id.*, ¶ 70.] Since gross negligence is insufficient to satisfy the *Walker*

25  *Process* intent standards, Sherwin-Williams' counterclaim is deficiently pled and must be

26  dismissed.

27

28

**4.      Sherwin-Williams Has Failed to Sufficiently Allege that Chip-Mender Has Engaged in Sham Litigation.**

A patentee's infringement suit is presumed to have been brought in good faith. *Handgards*, 601 F.2d at 996.  Thus, to properly plead a claim for bad faith litigation under § 2 of the Sherman Act, Sherwin-Williams must satisfy the two-part criteria of "sham" litigation: 1) the lawsuit must be objectively meritless such that "no reasonable litigant could expect success on the merits" and 2) it must be found that "the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor." *Professional Real Estate Investors*, 508 U.S. at 60.  Sham litigation requires more than a failed legal theory; a plaintiff also must also show some abuse of process and requires clear and convincing evidence of bad faith. *C.R. Bard*, 157 F.3d at 1367.  In particular, "the 'sham' exception to *Noerr-Pennington*…encompasses situations in which persons use the governmental process--as opposed to the outcome of that process--as an anticompetitive weapon." *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 366 (1991).

Moreover, because a sham litigation claim implicates the right to petition governmental bodies under *Noerr-Pennington*, sham litigation claims are subjected to a heightened pleading standard.  *Oregon Natural Resources Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991).  Thus, in evaluating a motion to dismiss a sham litigation claim, the plaintiff must satisfy more than the usual 12(b)(6) standard; a sham litigation claim "must include allegations of the specific activities which bring the defendant's conduct into one of the exceptions to *Noerr-Pennington* protection." *Id.* (citations and internal quotations omitted).

Here, as was the case with the *Walker Process* claim, Sherwin-Williams alleges that the anti-competitive conduct is Chip-Mender's initiation of patent litigation against Sherwin-Williams.  [Counterclaims, ¶¶ 95-96.]  Sherwin-Williams further alleges that while Chip-Mender currently may not have monopoly power, it may achieve a market share in excess of 50% (and presumably may therefore obtain monopoly power) if it is "successful in enforcing the fraudulently obtained and invalid patents-in-suit" via the underlying patent infringement litigation.  [*Id.*, ¶ 97.]  These allegations clearly demonstrate that Sherwin-Williams' sham

litigation claim is predicated on the outcome of plaintiff's infringement claims on the merits. There is no allegation that Chip-Mender somehow will obtain monopoly power based on the alleged sham litigation if the patent infringement claim is unsuccessful in the litigation.

While Sherwin-Williams may fear that its business will be harmed in the likely event that Chip-Mender establishes that Sherwin-Williams is liable for patent infringement, that fear cannot serve as the basis for an antitrust claim. Because Sherwin-Williams has not alleged the use of the litigation process – as opposed to the outcome – as a competitive weapon, Chip-Mender's and Russo's motion to dismiss this counterclaim must be granted. *See Oregon Natural Resources Council,* 944 F.2d at 533 (affirming dismissal of sham litigation claim on the ground that the pleading made clear that mere filing of a lawsuit was insufficient to achieve the defendant's alleged anti-competitive goal; in order to succeed, defendant needed the actual relief it was requesting from the courts).

### 5.   At a Minimum, The Antitrust Claims Must Be Dismissed As to Russo.

While Sherwin-Williams has asserted its *Walker Process* antitrust claims against Mr. Russo personally, presumably for its *in terrorem* effect, there is no conceivable basis for alleging that Mr. Russo could be liable on such a claim. The Supreme Court and the Federal Circuit "clearly require the enforcement or assertion of the patent as an element necessary to establish antitrust liability." *K-Lath, Div. of Tree Island Wire (USA), Inc. v. Davis Wire Corp.*, 15 F.Supp.2d 952 (C.D.Cal. 1998), citing *Walker Process*, 382 U.S. at 174 and *Nobelpharma*, 141 F.3d at 1071. In fact, the Ninth Circuit has specifically held that unless a patent-based antitrust defendant actually owns the patent at issue and attempts to enforce it, no claim can be stated against that defendant. *California E. Labs., Inc. v. Gould*, 896 F.2d 400, 403 (9th Cir. 1990); *see also Townshend*, 2000 WL 433505 (dismissing patent-based antitrust counterclaim where counterclaim defendant was not the patent infringement plaintiff); *Unitherm Food Sys.*, 375 F.3d at 1358 ("as a matter of Federal Circuit antitrust law, the standards that we have developed for determining jurisdiction in a Declaratory Judgment Action of patent invalidity also define the minimum level of 'enforcement' necessary to expose the patentee to a Walker Process claim for attempted monopolization").

- 13 -

1   Here, Sherwin-Williams acknowledges that "Chip-Mender owns all rights in and to" the

2   two patents-in-suit.  [Counterclaims, ¶¶ 49, 56.]  There are no allegations that Mr. Russo owns

3   the Chip-Mender Patents (and therefore no legally sufficient allegations that Mr. Russo has

4   enforced the patents).  Nor are there (nor can there be) any allegation that Mr. Russo as an

5   individual has "a dangerous probability of achieving monopoly power," a required element for

6   any Sherman Act attempted monopolization claim.  Accordingly, Sherwin-Williams cannot as a

7   matter of law maintain a *Walker Process* or sham litigation claim against Mr. Russo individually,

8   and these counterclaims should be dismissed with prejudice.

9      **D.**      **Sherwin-Williams Has Failed to Properly State a Claim for Unfair Competition Under § 17200, and No Facts Exist to Support Such a Claim.**

10

11   To sustain a cause of action for a violation of California Business and Professions Code

12   § 17200 ("§ 17200"), a claimant must establish that the practice at issue is either unlawful (i.e., is

13   forbidden by law), unfair (i.e., harm to victim outweighs any benefit), or fraudulent (i.e., is likely

14   to deceive members of the public).  *Olsen v. Breeze*, 48 Cal.App.4th 608, 617-18, (1996);

15   *Saunders v. Superior Court*, 27 Cal.App.4th 832, 839 (1994).  The claimant "must state with

16   reasonable particularity the facts supporting the statutory elements of the violation."  *Silicon*

17   *Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1316 (N.D. Cal. 1997) citing *Khoury*

18   *v. Maly's of Calif.*, 14 Cal.App.4th 612, 619 (1993).

19   Additionally, on November 2, 2004, California voters approved Proposition 64,

20   amending this section to require that a private claimant in an unfair competition cause of action

21   must allege that it "suffered injury in fact" or "have lost money or property as a result of such

22   unfair competition."  *See* Cal. Const., Art. II, § 10, subd. (a); *see also Huntingdon Life Sci., Inc.,*

23   *v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228, 1261 (2005).  In other

24   words, "[p]rivate plaintiffs who do not allege actual 'injury in fact' may not 'prosecute' claims

25   under either statute."  *Goodwin v. Anheuser-Busch Cos.*, 2004 WL 3143579, at *4 (Cal.Sup.Ct.

26   Dec. 13, 2004) (citations omitted).

27   Sherwin-Williams argues that Chip-Mender's and Russo's decision to wait over one year

28   from the time Chip-Mender initially attempted to license the patents-in-suit to Sherwin-Williams

- 14 -

to the time it followed-up with Sherwin-Williams with further communication constitutes an unlawful, unfair, or fraudulent business practice under § 17200.  [*See* Counterclaims, ¶ 102.]  In addition, Sherwin-Williams alleges that Chip-Mender's decision to file its lawsuit (which Sherwin-Williams classifies as "an attempt to unlawfully interfere directly with Sherwin-Williams' ability to compete in the market for paint pen applicators") constitutes an unlawful, unfair, or fraudulent business practice under § 17200.  [*See id.*, ¶ 103.]  Both of these allegations are without merit as a matter of law.

> **1.    Sherwin-Williams Has Failed to Properly State a Claim for Unfair Competition Under § 17200 Against Any Party.**
>
> > **a.    Sherwin-Williams lacks standing to bring a claim under § 17200.**

In pleading its § 17200 claims against Chip-Mender, Sherwin-Williams has failed to allege injury-in-fact, or a loss of money or property as a result of Chip-Mender's delay in pursuing further license discussions with Sherwin-Williams, or as a result of Chip-Mender's decision to file its lawsuit.  However, California voters and courts alike have determined that a claimant of an unfair competition cause of action must have "suffered injury in fact" or have "have lost money or property as a result of such unfair competition."  *See* Cal. Const., Art. II, § 10, subd. (a); *see also Huntingdon Life Sci.*, 129 Cal.App.4th at 1261; *Goodwin*, 2004 WL 3143579, at *4.  Accordingly, without adequately alleging injury-in-fact, or a loss of money or property, Sherwin-Williams lacks standing to bring claims for unfair competition under § 17200.

> > **b.    Undue delay does not constitute unfair competition.**

Sherwin-Williams' first allegation in relation to its claim under § 17200, that Chip-Mender's decision to wait over one year from the time it initially attempted to license the patents-in-suit to Sherwin-Williams to the time it followed-up with Sherwin-Williams with further communication constitutes an unlawful, unfair, or fraudulent business practice, is lacking in any sort of legal basis.  Indeed, there is no legal authority that delay in offering a patent license or in raising patent infringement claims constitutes unfair competition.  To the contrary, it is widely acknowledged that patent owners are generally granted a six-year statute of limitations. 35 U.S.C. § 286; *see also A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1034-

35 (Fed.Cir. 1992).  Moreover, at least one court has specifically held that a plaintiff can "reasonably delay [in] bringing suit for over four years until … determine[d] that the extent of possible infringement made litigation monetarily ripe."  *Tripp v. United States*, 406 F.2d 1066, 1071 (Ct.Cl. 1969); *see also France Mfg. Co. v. Jefferson Electric Co.*, 106 F.2d 605, 609 (6th Cir. 1939) ("It is well-settled that mere delay short of the statutory period of limitation is not sufficient of itself to bar relief.").

While Sherwin-Williams can certainly assert laches or estoppel as a defense to Chip-Mender's patent claims,[3] Sherwin-Williams' argument that Chip-Mender has engaged in unfair competition by opting to wait in raising its claims must be rejected.

### 2. Sherwin-Williams Has Failed to Properly State a Claim for Unfair Competition Under § 17200 Against Russo.

At the very least, Sherwin-Williams has failed to properly state a claim under § 17200 against Russo.  These claims arise exclusively out of Chip-Mender's alleged delay in filing suit, and its purported initiation of baseless litigation.  As noted previously, however, Chip-Mender is the sole owner of the patents-in-suit, and the only plaintiff in the underlying litigation.  Accordingly, Sherwin-Williams' claim for unfair competition under § 17200 against Russo must be dismissed with prejudice.

### E. Sherwin-Williams Has Failed to Properly State a Claim for False or Misleading Statements Under § 17500, and No Facts Exist to Support Such a Claim.

To prevail on a false advertising claim under § 17500 of California's Business and Professions Code ("§ 17500"), a claimant must show that the defendant made, with the intent "to dispose…of real or personal property or to perform services…or to induce the public to enter into any obligation relating thereto, to make or disseminate…any statement, concerning that real or personal property or those services...which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

---

[3]  Notwithstanding Sherwin-Williams' right to assert a laches or estoppel defense, Chip-Mender does not believe that Sherwin-Williams can prevail on such defenses.  In fact, courts have specifically held that "when the period of delay is less than six years, a plea of laches is dismissed on the basis that mere delay short of the statutory period is not enough."  *U.S. Bolt Expansion Bolt Co. v. Jordan Indus., Inc.*, 346 F.Supp. 541, 542 (E.D. Penn. 1972) (holding a five-year delay insufficient to prove laches).

1    *Bernardo v. Planned Parenthood Fed. of Am.*, 115 Cal.App.4th 322, 356 (Cal.App.4th 2004); *see*

2    *also Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002).  The claimant must also show that members

3    of the public are likely to be deceived.  *Committee on Children's Television v. General Foods*

4    *Corp.*, 35 Cal.3d 197, 211 (1983).

5        Sherwin-Williams bases its claim for false advertising on Chip-Mender's attempt to

6    license the patents-in-suit to Sherwin-Williams [*see* Counterclaims, ¶ 105] and Chip-Mender's

7    marketing of the Chip-Mender touch-up paint pens as "patented" on the Chip-Mender Web site.

8    [*See id.*, ¶ 106.]  Neither of these alleged instances of false advertising qualifies as such under the

9    relevant legal standards.

10               **1.      Chip-Mender's Licensing Proposals to Sherwin-Williams Do
                          Not Qualify as "Advertisements".**

11       Sherwin-Williams' allegations regarding Chip-Mender's license proposals do not state a

12   claim under the plain language of California Business & Professions Code Section 17500.  That

13   statute on its face relates only to statements made in connection with the proposed disposition

14   "of real or personal property" or the performance of services.  Sherwin-Williams has not alleged

15   that Chip-Mender's attempts to license the patents-in-suit are statements connected with the

16   disposition of real or personal property, and Chip-Mender has not been able to find any authority

17   that would support such an allegation.  Accordingly, Sherwin-Williams' Sixth Counterclaim

18   should be dismissed to the extent it purports to be based on Chip-Mender's licensing efforts.

19               **2.      Chip-Mender's Advertisements on Its Web Site Are Not
                          Untrue or Misleading.**

20

21       Although Sherwin-Williams complains that Chip-Mender has tried to sell products by

22   making statements on its Web site about its "patented system" and products "which are protected

23   by" U.S. Patents, Sherwin-Williams has not identified anything about these statements that could

24   be considered untrue or misleading.  Sherwin-Williams does not dispute that Chip-Mender owns

25   the Chip-Mender Patents; in fact, Sherwin-Williams specifically alleges such ownership in its

26   counterclaims.  [Counterclaims, ¶¶ 49, 56.]  Nor does Sherwin-Williams allege that the Chip-

27   Mender products are not in fact covered by the Chip-Mender Patents.  Rather, Sherwin-Williams

28   argues that the statements are false because Chip-Mender knows (or should know) that the

- 17 -

patents are invalid and unenforceable.  This assertion is incorrect as a matter of fact and law.

To be clear, the Chip-Mender Web site merely says that its products are patented.  Not surprisingly, the Web site www.dictionary.com defines the term "patented" as "protected by patent."  [*See* http://www.dictionary.com/search?q=patented citing WordNet ® 2.0, © 2003 Princeton University.]  There can be no question that Chip-Mender's paint pens are currently protected by patents issued by the U.S. Patent Office.  Thus, even in the unlikely event that the patents are ultimately found invalid, the statements on the Web site are literally accurate.  As at least one Court has noted in addressing a similar claim that a product was patented: "There can be no 'falsity' about the patent; its existence is a fact and by law it must be presumed valid until its invalidity is established by a party contesting it. . . ."  *Chromium Indus., Inc. v. Mirror Polishing & Plating Co.*, 448 F.Supp. 544, 557 (N.D. Ill. 1978).

To date, the Chip-Mender Patents have not been contested, invalidated or cancelled.  In light of the presumption of validity given to these patents, it would be improper to conclude that Chip-Mender's statements that its products are patented are untrue or misleading, unless and until a Court makes a determination to such effect, and Chip-Mender does not cease making such statements.  Accordingly, Sherwin-Williams has not and cannot establish that Chip-Mender has made statements that are either untrue or misleading in violation of § 17500.  *See Bernardo*, 115 Cal.App.4th at 356; *see also Kasky*, 27 Cal.4th at 949.[4]

### 3.   Sherwin-Williams Has Failed to Properly State a Claim for False or Misleading Statements Under § 17500 Against Russo.

In any event, Sherwin-Williams has failed to properly state a claim under § 17500 against Russo.  As an initial matter, Mr. Russo himself has neither attempted to license the patents-in-suit, nor brought the underlying patent infringement lawsuit against Sherwin-Williams.  To the contrary, as discussed in detail above, it is Chip-Mender that is the rightful assignee of the Chip-Mender Patents; it is Chip-Mender who has attempted to license the Chip-Mender Patents to Sherwin-Williams, and it is Chip-Mender who has brought the underlying lawsuit.

---

4  Additionally, because Chip-Mender has not engaged in statements that are untrue or misleading, Sherwin-Williams cannot establish that there was any reason for members of the public to be deceived.  *See Committee on Children's Television*, 35 Cal.3d at 211.

1   Additionally, Russo has not attempted to personally sell the Chip-Mender touch-up paints

2   pens.  Indeed, the only allegations Sherwin-Williams has made regarding advertisement of the

3   pens relate to statements made "to sell its [i.e., Chip-Mender's] touch-up paint pens" on the

4   Chip-Mender Web site, and an allegation made by Chip-Mender in the Complaint relating to

5   Chip-Mender's sales activities.  [Counterclaims, ¶ 106.]

6   As a result, Sherwin-Williams' claim for false advertising against Russo must therefore

7   be dismissed with prejudice.

8   **F.      Sherwin-Williams Has Failed to Properly State a Claim for Deceptive**
        **Trade Practices Under Ohio Revised Code § 4165 *et seq*., and No**
9       **Facts Exist to Support Such a Claim.**

10  Sherwin-Williams bases its claim for deceptive trade practices on Chip-Mender's and

11  Russo's attempt to license the patents-in-suit [*see* Counterclaims, ¶ 108] and Chip-Mender's and

12  Russo's attempts to sell the Chip-Mender touch-up paint pens.  [*See id.*, ¶ 109.]  This claim

13  largely fails for the same reasons as its Sixth Counterclaim under California Business and

     Professions Code § 17500.
14

15  **1.      Sherwin-Williams Has Failed to Properly State a Claim for**
            **Deceptive Trade Practices Under Ohio Revised Code § 4165.**

16  Sherwin-Williams has carefully avoided linking its Seventh Counterclaim for violation of

17  the Ohio Deceptive Trade Practices Act to any particular subsection of the statute.  Presumably,

18  this is because at least some of the alleged misconduct does not fall within the scope of the

19  statute.

20  In particular, Sherwin-Williams erroneously alleges that Chip-Mender violated the

21  Deceptive Trade Practices Act by attempting to license the patents-in-suit despite knowing that

22  the patents are invalid and unenforceable.  [Counterclaims at Paragraph 108.]  But Ohio Revised

23  Code § 4165.02, which defines the conduct prohibited under the Act, does not list any unlawful

24  activities that even remotely resemble Sherwin-Williams' licensing allegations.  As a result,

25  these allegations cannot form the basis of Sherwin-Williams' Seventh Counterclaim.

26  Sherwin-Williams also asserts that Chip-Mender violated the Ohio statute by falsely

27  referring to its paint pens as "patented" or "protected by" U.S. Patents.  It is unclear what, if any,

28  subsection of Section 4165.02 would encompass these charges.  However, as noted previously in

- 19 -

1  connection with Sherwin-Williams' § 17500 Counterclaim, these allegations cannot be deemed

2  false or deceptive, and therefore are not actionable as a matter of law.

3          **2.    Sherwin-Williams has Failed to Properly State a Claim for**
                   **Deceptive Trade Practices Under Ohio Revised Code § 4165**
4                  **Against Russo.**

5          Sherwin-Williams' claim against Mr. Russo under the Ohio Deceptive Trade Practices

6  Act is based on virtually the identical allegations as the claim under California Business &

7  Professions Code § 17500.  Not surprisingly, therefore, Mr. Russo submits that the Ohio law

8  claim should be dismissed for the same reasons as the § 17500 claims, and in the interest of

9  brevity, incorporates that argument here by reference.

10 **II.    IN THE ALTERNATIVE, THE COURT SHOULD BIFURCATE AND STAY**
          **DISCOVERY RELATING TO SHERWIN-WILLIAMS' COUNTERCLAIMS FOR**
11        **AFFIRMATIVE RELIEF PENDING THE RESOLUTION OF THE PATENT**
          **CLAIMS ON WHICH THEY ARE PREDICATED.**

12         Each of Sherwin-Williams' counterclaims squarely depends upon the resolution of the

13 underlying patent claims.  Therefore, to the extent the Court chooses not to dismiss those

14 counterclaims, Chip-Mender submits that it would be appropriate to bifurcate trial of Sherwin-

15 Williams' Antitrust and Related Claims[5], and to stay discovery relating to those claims pending

16 resolution of Chip-Mender's patent claims.  Here, bifurcation will promote judicial economy and

17 efficiency, avoid prejudice from delay and the potentially unnecessary and wasteful expenditure

18 of resources, and avoid the risk of jury confusion.

19         **A.    Legal Standards**

20         Under Federal Rule of Civil Procedure 42(b), a district court has broad discretion to order

21 separate trials "in furtherance of convenience or to avoid prejudice, or when separate trials will

22 be conducive to expedition and economy."  *See In re Innotron Diagnostics*, 800 F.2d 1977 (Fed.

23 Cir. 1986).  In addition, Federal Rule of Civil Procedure 26(d) provides that the Court may stay

24 discovery in the interests of justice.  In determining whether ordering separate trials will best

25 serve the convenience of the parties and the court, avoid prejudice, and minimize expense and

26 delay, courts must make the choice most likely to result in a just final disposition of the

27 _____

28     5  The term "Antitrust and Related Claims" refers to Sherwin-Williams' *Walker Process* Fraud, Bad Faith
   Litigation, § 17200, § 17500, and Ohio Deceptive Trade Practices Act counterclaims.

MEMO IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, BIFURCATE
Case No. 05-CV-3465 (MEJ)

1   litigation.  *Innotron*, 800 F.2d at 1084; *see also Baxter Int'l, Inc. v. Cobe Lab., Inc.*, 1992 WL

2   77665, at \*5 (N.D. Ill. Apr. 7, 1992) (granting bifurcation due to burden on jury).

3          Indeed, courts routinely bifurcate patent-based antitrust counterclaims from the

4   underlying patent litigation.  *See, e.g., Innotron*, 800 F.2d at 1084 (denying mandamus petition to

5   overturn district court order separating issues for trial and noting "now-standard practice of

6   separating for trial patent issues and those raised in an antitrust counterclaim"); *see also*

7   *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995) (noting practice of severing

8   patent and antitrust claims).

9          In fact, federal district courts have almost invariably found it in the best interest of both

10  the court and the parties to sever antitrust issues from issues of patent invalidity and

11  infringement, and to stay discovery and trial of the antitrust issues until after the patent issues

12  have been resolved.  *Innotron,* 800 F.2d at 1084; *see also ASM Am., Inc. v. Genus, Inc.*, 2002

13  WL 24444, at \*7 (N.D.Cal. Jan. 9, 2002) (bifurcating discovery and trial of antitrust

14  counterclaims from patent claims because judicial economy was promoted); *Hydranautics*, 70

15  F.3d at 536; *Hewlett-Packard Co. v. GenRad, Inc.*, 882 F. Supp. 1141, 1158 (D. Mass. 1995)

16  ("Antitrust issues are complex and, particularly with respect to damages, raise different issues

17  and proof."); *Baxter*, 1992 WL 77665, at \* 2, 4 (separating and staying discovery and trial of

18  antitrust counterclaim in light of lack of common issues, and due to prejudice, probable jury

19  confusion and possibility that issues relating to antitrust counterclaim could be rendered moot);

20  *Korody-Colyer Corp. v. General Motors Corp.,* 828 F.2d 1572 (Fed. Cir. 1987); *Carlisle Corp.*

21  *v. Hayes*, 635 F. Supp. 962, 967-68 (S.D. Cal. 1986) (bifurcating counterclaim alleging

22  attempted monopolization based on enforcement of patent allegedly obtained by fraud on the

23  PTO).

24          **B.      Sherwin-Williams' Counterclaims Should Be Bifurcated and Stayed**
            **Because They Are Predicated on Resolution of the Patent Case, and**
25          **May Be Rendered Moot by Such Resolution.**

26          Each of Sherwin-Williams' Counterclaims depends entirely upon the resolution of the

27

28

MEMO IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, BIFURCATE
Case No. 05-CV-3465 (MEJ)

1    underlying patent claims (i.e. the § 2 Sherman Act Claims[6] at least depend upon a finding of

2    patent invalidity and unenforceability; and the § 17500, § 17200, and Ohio Deceptive Trade

3    Practices Claims depend upon a similar finding and/or Chip-Mender's statement that its product

4    is "patented" being false).  If the underlying patent infringement claims are resolved in Chip-

5    Mender's favor, the Counterclaims thus become moot.

6         Bifurcation is therefore particularly appropriate here because resolution of the patent

7    claims could potentially obviate the need for trial on the Antitrust and Related Claims.

8    Specifically, resolution of the patent claims will determine the threshold issues of validity and

9    enforceability, and, hence, whether these Antitrust and Related Claims stand or fail.  Moreover,

10   in the unlikely event that  trial of the Antitrust and Related Claims is ultimately required, trying

11   the patent claims first will also significantly narrow the issues remaining.

12        **C.    Sherwin-Williams' Counterclaims Should Be Bifurcated and**
              **Stayed to Avoid Unnecessary Expenditure of Resources.**

13        To prove or defend against the unique elements of the Counterclaims, the parties will be

14   required to conduct extensive additional discovery on various antitrust and unfair competition

15   issues that is unrelated to patent proofs and that may be unnecessary and wasteful.  For example,

16   fact and expert discovery will be needed relating to issues such as market definition, market

17   share, barriers to entry, market power, market dynamics, and intent to monopolize.  *See Innotron*,

18   800 F.2d at 1085.  Expert economic analysis of the antitrust issues will need to be completed,

19   requiring additional expert reports and rebuttal reports.  In addition, expert assessment of

20   damages relating to the antitrust and unfair competition issues will be necessary.

21        All of this discovery is additional to and unrelated to that required for the patent

22   infringement claim.  *See Hewlett-Packard*, 882 F. Supp. at 1158 ("Antitrust issues are complex

23   and, particularly with respect to damages, raise different issues and proof.").  The discovery to

24   obtain proof of antitrust violations requires is in fact entirely different from that requried by the

25   patent inquiry, and it should therefore, not be engaged in unnecessarily or potentially wastefully.

26

27        ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
          [6]  Chip-Mender also notes the fundamental inconsistency of Sherwin-Williams' argument, in that it will
     necessarily fail regardless of the resolution of the patent claims.  Specifically, if Chip-Mender prevails, Sherwin-
28   Williams has failed to prove the fraud upon which those claims are based.  But if Sherwin-Williams prevails, Chip-
     Mender will have no possibility of achieving market power.

MEMO IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, BIFURCATE
Case No. 05-CV-3465 (MEJ)

1    Finally, the extensive additional work associated with the Counterclaims would impose a

2    substantial financial burden on Chip-Mender.  As discussed above, Chip-Mender is merely a

3    closely-held company with three part-time employees that sells only one product, and barely

4    derives $100,000 in revenue a year.  [*See* Russo Decl., ¶¶ 6-9.]  As further noted above, Chip-

5    Mender can avoid the cost and burden associated with litigating the complex antitrust, false

6    advertising, and unfair competition issues in the likely event that it prevails on its patent

7    infringement claims.  The avoidance of this additional form of prejudice constitutes yet another

8    basis for ordering the requested bifurcation.

9    **D.    Granting Bifurcation Avoids the Prejudice of Delay.**

10    Developing the factual record on the Antitrust and Related Claims alone will take at least

11    nine to twelve months and will cost the parties hundreds of thousands of dollars, if not more.  All

12    this time, Chip-Mender, the Plaintiff, will be forced to wait to obtain resolution of its claims.

13    Such a delay is prejudicial to Chip-Mender because, *inter alia*, Chip-Mender is a small closely-

14    held company that has not yet made a profit.  [*See* Russo Decl., ¶¶ 6-7.]  Bifurcation should,

15    therefore, be granted to avoid prejudice resulting from delay.  *ASM*, 2002 WL 24444, at *5

16    (noting interest in preventing delay of trial of patent claims); *Components, Inc. v. Western Elec.*

17    *Co.*, 318 F. Supp. 959, 966-67 (D. Me. 1970) (severing and staying antitrust counterclaims from

18    patent claims, in part to avoid delay).

19    **E.    Granting Bifurcation Avoids Confusion of the Issues.**

20    Trying Sherwin-Williams' antitrust counterclaims along with the already complex patent

21    claims will only further complicate trial and lead to jury confusion.  The parties would likely

22    require at least an extra week or two to accommodate factual and expert testimony relating to the

23    Antitrust and Related Counterclaims.  In addition to the technical patent issues, the jury would

24    need to learn economic principles and to follow complex expert analysis, on both antitrust

25    liability and damages.  To minimize the risk of jury confusion, the Counterclaims should be

26    bifurcated.  *Baxter*, 1992 WL 77665, at *2, 4 (granting bifurcation due to burden on jury).

27    **F.    Granting Bifurcation Serves Judicial Economy.**

28    Fed. R. Civ. P. 42 encourages bifurcation where, as here, the interests of judicial

economy will be served.  In this case, judicial economy will be served because trying the patent claims first will resolve certain threshold issues raised by the Antitrust and Related Claims. While the Antitrust and Related Claims raise additional issues that are largely unrelated to the patent claims, as discussed above, there is substantial overlap.  This overlap relates to Sherwin-Williams' allegations that Chip-Mender asserted its patent rights knowing the patents to be invalid and that it filed an objectively baseless lawsuit in furtherance of its attempts to maintain or acquire monopoly power.

Bifurcation is appropriate here because resolution of the underlying patent claims may dispose of these issues.  For example, in the patent infringement suit, the jury and the Court will determine whether the asserted patents are valid.  If the validity of the patents is upheld, Sherwin-Williams' allegation that Chip-Mender improperly asserted its patent rights must fail. *See, e.g., Donnelly v. Reitter & Schefenacker USA Ltd.*, 2002 WL 31418042, at *5 (W.D.Mich. Aug. 13, 2002) (bifurcating trial of antitrust counterclaims "[i]f the Court or a jury finds that [plaintiff's] patents in question were valid and enforceable, [defendant's] counterclaims will be weakened if not obviated altogether") (citation omitted); *see also ASM*, 2002 WL 24444, at *7 (granting bifurcation where "[r]esolution of the invalidity issue may dispose of some of the antitrust counterclaims altogether, and may potentially narrow the damages inquiry on any remaining claims").  Defendant's *Walker Process* claim, premised on the assertion that the Chip-Mender Patents are unenforceable due to fraud on the Patent Office, will also be rendered moot. Likewise, Sherwin-Williams' sham litigation claim will no longer be viable because the claim is premised on the allegation that Chip-Mender's lawsuit is objectively baseless.[7]

Moreover, Sherwin-Williams' § 17200, § 17500, and Ohio Deceptive Trade Practices Act claims would also be rendered moot by a finding in Chip-Mender's favor on the patent claims, as

---

[7]  Chip-Mender's claim cannot be objectively baseless if it is determined that Chip-Mender has asserted a valid patent.  Of course, if the patent is determined to be invalid, such a finding does not mean that the lawsuit was objectively baseless.  This issue would simply need to be determined at the trial relating to the Counterclaims.  In any event, in light of the *Noerr-Pennington* doctrine, defendant will be hard pressed to prove their allegation that Chip-Mender filed an objectively baseless lawsuit. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972).

1   each such cause of action requires that Chip-Mender's statement that its touch-up paint pen is

2   "patented" be determined false.  If the validity of the Chip-Mender Patents is upheld, such claims

3   must fail.  The interests of judicial economy will be served by determining such threshold issues

4   prior to embarking upon the trial of the Antitrust and Related Counterclaims.

5   **G.    Granting Bifurcation Will Not Prejudice Sherwin-Williams.**

6   Sherwin-Williams will not be prejudiced if its Antitrust and Related Claims are

7   bifurcated, especially since trial of the patent claims may obviate the need for trial on the

8   Antitrust and Related Claims alltogether.  To the extent any of Sherwin-Williams' claims survive

9   the patent infringement trial, Sherwin-Williams will have a full and fair opportunity to try those

10  claims.  Further, given that Sherwin-Williams is already complaining about the cost of the

11  litigation as a basis for its injury [see Counterclaims, ¶ 80], undertaking discovery on, and

12  simultaneously trying, the Antitrust and Related Claims brought by Sherwin-Williams certainly

13  exascerbate the problem.  Accordingly, bifurcating and staying discovery on those claims will

14  benefit, and not prejudice, Sherwin-Williams.

15  <u>**Conclusion**</u>

16  For the foregoing reasons, Sherwin-Williams' Counterclaims against Chip-Mender and

17  Russo should be dismissed with prejudice for failure to state a claim upon which relief may be

18  granted, or in the alternative, they should be bifurcated and stayed pending the resolution of

19  Chip-Mender's patent claims.

20                          Respectfully submitted,

21                          PERKINS COIE LLP

22
    Date:  October 17, 2005        By:_____/s/_____
23                                     Kenneth B. Wilson
                                    Attorneys for Plaintiff CHIP-MENDER, INC.
24                                  and Counterclaim-Defendants CHIP-MENDER,
                                    INC. and TIMOTHY M. RUSSO
25

26

27

28

MEMO IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, BIFURCATE
Case No. 05-CV-3465 (MEJ)