United States District Court
For the Northern District of California

1
2
3
4
5
6

**NOT FOR CITATION**

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10
11
12

13   CHIP-MENDER, INC.

14            Plaintiff,                    No. C 05-3465 PJH

15        v.                               **ORDER GRANTING MOTION TO**
                                           **DISMISS COUNTERCLAIMS**
16   THE SHERWIN-WILLIAMS COMPANY,

17            Defendant.
     _____
18
     AND RELATED COUNTERCLAIMS
19   _____/

20        The motion of plaintiff and counterdefendant Chip-Mender, Inc. ("Chip-Mender") and

21   counterdefendant Timothy M. Russo ("Russo") to dismiss the third through seventh

22   counterclaims, and alternative motion to bifurcate the counterclaims and stay discovery, came

23   on for hearing before this court on December 7, 2005.  Chip-Mender and Russo appeared by

24   their counsel Kenneth B. Wilson and Stefani E. Shanberg, and defendant and counterclaimant

25   Sherwin-Williams Company ("Sherwin Williams") appeared by its counsel Peter N. Larson

26   and Regan J. Fay.  Having read the parties' papers and carefully considered their arguments

27   and the relevant legal authority, and good cause appearing, the court hereby GRANTS the

28   motion as follows and for the reasons stated at the hearing.

United States District Court
For the Northern District of California

**INTRODUCTION**

This is a patent infringement action.  Chip-Mender sells automotive paint touch-up pens, and owns two patents for a "Paint Applicator System" – U.S. Patent No. 6,254,299, and U.S. Patent No. 6,283,663 ("the Chip-Mender patents") – both issued in 2001.  Russo, the founder and president of Chip-Mender, is listed as inventor on both patents.

Sherwin Williams competes with Chip-Mender, and manufactures and sells the "Dupli-Color Scratch Fix 2-in-1 Pen" (the "Dupli-Color Pen").  On May 22, 2003, Chip-Mender wrote to Sherwin Williams, stating that Chip-Mender owned the '299 patent and the '663 patent, and offered Sherwin Williams a license for the patented technology.  Sherwin Williams did not respond, and launched its Dupli-Color Pen in October 2003.

On April 8, 2005, Chip-Mender wrote Sherwin Williams to inform it of the alleged infringement, and again offered to license the Chip-Mender technology.  On September 2, 2005, Sherwin Williams advised Chip-Mender that it was not interested in licensing the technology, claiming that the Chip-Mender patents were invalid in view of the prior art. Sherwin Williams threatened to seek sanctions pursuant to Federal Rule of Civil Procedure 11 if Chip-Mender pursued its claim of patent infringement, and also indicated that it would bring antitrust counterclaims against Chip-Mender.

Chip-Mender filed this action on August 26, 2005, alleging that Sherwin-Williams' Dupli-Color Pen infringes Chip-Mender's patents.  On September 7, 2005, Chip-Mender effected service of the patent infringement complaint.

On September 27, 2005, Sherwin Williams filed counterclaims against Chip-Mender and Russo, seeking 1) a declaratory judgment for invalidity, non-infringement, and unenforceability of the '299 patent; and 2) a declaratory judgment for invalidity, non-infringement, and unenforceability of '663 patent; and alleging 3) violation of § 2 of the Sherman Act (Walker-Process fraud); 4) violation of § 2 of the Sherman Act (bad faith litigation); 5) violation of California Business & Professions Code § 17200; 6) violation of California Business & Professions Code § 17500; and 7) violation of Ohio Revised Code § 4165, et seq.

**United States District Court**
For the Northern District of California

1    Sherwin Williams alleges, among other things, that Chip-Mender and Russo

2    fraudulently obtained two United States patents for a known paint applicator, by concealing

3    material information that the paint applicator was actually a public domain correction pen (the

4    "Pentel pocket correction pen") readily available to the general public at office supply stores.

5    Sherwin Williams claims that Chip-Mender and Russo concealed critical pieces of information

6    about the prior art during the prosecution of the patents-in-suit.

7    Chip-Mender and Russo now move for an order dismissing the third through seventh

8    counterclaims, arguing that they fail to state a claim and cannot be amended to state a claim.

9    They also seek an order dismissing the first and second counterclaims for declaratory relief,

10   as against Russo.  In the alternative, they seek an order bifurcating and staying the

11   counterclaims pending the resolution of Chip-Mender's claims against Sherwin Williams.

**DISCUSSION**

13   A.    Legal Standard

14   A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to

15   state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in

16   support of the claim which would entitle the plaintiff to relief.  Conley v. Gibson, 355 U.S. 41,

17   45-46 (1957); Williamson v. Gen'l Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir.), cert.

18   denied, 531 U.S. 929 (2000).  Review is limited to the contents of the complaint.  Allarcom

19   Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  All allegations

20   of material fact are taken as true and construed in the light most favorable to the nonmoving

21   party.  Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996).

22   Motions to dismiss for failure to state a claim are disfavored, see Gilligan v. Jamco

23   Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are proper only in

24   "extraordinary" cases.  See United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir.

25   1981).  In dismissing for failure to state a claim, "a district court should grant leave to amend

26   even if no request to amend the pleadings was made, unless it determines that the pleading

27   could not possibly be cured by the allegation of other facts."  Doe v. United States, 58 F.3d

28   494, 497 (9th Cir. 1995) (citations omitted).

3

B.     Motion to Dismiss

Chip-Mender and Russo move for an order dismissing the first and second counterclaims for declaratory relief, as against Russo.  They also seek an order dismissing the third, fourth, fifth, sixth, and seventh counterclaims, arguing that each fails to state a claim and cannot be amended to state a claim.

1.     Declaratory relief counterclaims against Russo

Chip-Mender and Russo seek dismissal of the first and second counterclaims as to Russo, for failure to state a claim.  They also argue that there can be no case or controversy as to Russo because he is not the owner of the Chip-Mender patents, and is not a party to the underlying patent infringement suit.  Sherwin Williams did not respond to this argument in its opposition brief.

A case must "present a case or controversy under Article III, § 2, of the Constitution" in order to be subject to federal jurisdiction.  Spencer v. Kemna, 523 U.S. 1, 7 (1998).  The plaintiff has the burden of proving jurisdiction.  Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 599 (9th Cir. 2001).

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  For a district court to have jurisdiction over a patent declaratory judgment matter, "[t]here must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity."  Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc., 363 F.3d 1361, 1373 (Fed. Cir. 2004) (citation and quotation omitted).

Here, Chip-Mender, as the owner of the patents-in-suit, filed the underlying action for patent infringement.  Sherwin Williams cannot allege that a case or controversy exists with regard to Russo, in connection with the Chip-Mender patents, because Russo is not the patent owner and lacks standing to sue Sherwin Williams.  See Paradise Creations, Inc. v. UV Sales,

United States District Court

For the Northern District of California

4

**United States District Court**
For the Northern District of California

1    Inc., 315 F.3d 1304, 1309 (Fed. Cir. 2003).  Accordingly, the court finds that the first and

2    second counterclaims must be DISMISSED as to Russo, for lack of subject matter

3    jurisdiction.[1]

4           2.      Sherman Act counterclaims

5           In the third and fourth counterclaims, Sherwin Williams alleges attempted

6    monopolization, in violation of § 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.  In the third

7    counterclaim, Sherwin Williams alleges "Walker Process fraud," and in the fourth counterclaim,

8    Sherwin Williams alleges "bad faith litigation."  Chip-Mender and Russo argue that Sherwin

9    Williams has not stated facts to support the elements necessary for these claims.

10          a.      attempted monopolization

11          Monopolization and attempted monopolization are prohibited by the Sherman Antitrust

12   Act. 15 U.S.C. § 2.  To state a claim for attempted monopolization, a plaintiff must allege:

13   (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive

14   conduct to accomplish the monopolization; (3) a dangerous probability of success; and

15   (4) causal antitrust injury.  Cost Mgmt. Servs. v. Washington Natural Gas Co., 99 F.3d 937,

16   949-50 (9th Cir. 1996); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 811 (9th Cir.

17   1988).

18          In general, the procurement of a patent does not constitute an antitrust violation.  FMC

19   Corp. v. Manitowok Co., 835 F.2d 1411, 1418 and n.16 (Fed. Cir. 1987).  Nor is it a violation

20   of the Sherman Act to bring a patent infringement action in good faith, even if it is ultimately

21   determined in the litigation that the patent-in-suit is invalid.  Atari Games Corp. v. Nintendo of

22   America, Inc., 897 F.2d 1572, 1576 (Fed. Cir. 1990).

23          The two exceptions to these general propositions are that a defendant may assert an

24   antitrust claim where the patent was procured by fraud on the Patent Office, Walker Process

25   Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172 (1965), and where it is shown by

26   clear and convincing evidence that the patent holder is enforcing the patent in bad faith,

27   _____

28          [1]  The court also finds that the first and second counterclaims fail to state a claim against
     Russo, as Russo is not the patent owner.

5

**United States District Court**

For the Northern District of California

1  Handgards, Inc. v. Ethicon, Inc., 601 F.2d 986, 993 (9th Cir. 1979).  In an action asserting

2  either of these exceptions, all the necessary elements of an antitrust claim must be

3  established, in addition to the alleged fraud and prior knowledge of invalidity.  Prof. Real

4  Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993).

5      Chip-Mender and Russo argue that Sherwin Williams fails to meet these pleading

6  standards because it has not alleged facts showing two of the four elements required for a

7  claim of attempted monopolization – dangerous probability of achieving monopoly power, and

8  antitrust injury.

9              i.      dangerous probability of achieving monopoly power

10     The third element in a claim for attempted monopolization is dangerous probability of

11  achieving monopoly power, which includes allegations regarding the market power held by the

12  antitrust defendant.  See Cost Management Services, 99 F.3d at 950 n. 15.  Monopoly power

13  is "the power to control prices or exclude competition."  United States v. Grinnell Corp., 384

14  U.S. 563, 571 (1966) (quoting United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377,

15  391 (1956)).

16     Chip-Mender and Russo argue that Sherwin Williams has alleged no facts to support

17  this element.  They also contend that Sherwin Williams' allegations of market power are

18  logically flawed, as they depend on the assertion that, on the one hand, Chip-Mender's patents

19  were fraudulently procured (and are invalid), and on the other hand, that the patents are valid

20  and enforceable.  They note in particular that Sherwin Williams alleges that Chip-Mender will

21  achieve market power if, and only if, it prevails on its patent infringement claim against

22  Sherwin Williams.  However, as Chip-Mender and Russo point out, if Chip-Mender prevails on

23  its infringement claim, that will necessitate a finding that Chip-Mender's patents are valid and

24  enforceable, and its share of the relevant market will then be irrelevant.

25     Chip-Mender and Russo also contend that the allegation of monopoly power is

26  deficient because Sherwin Williams fails to plead facts showing that Chip-Mender and Russo

27  own a dominant share of the relevant market, that there are significant barriers to entry, and

28  that existing competitors lack the capacity to increase their output in the short run.  In support,

1    they cite to the Ninth Circuit's decision in <u>Rebel Oil Co. v. Atlantic Richfield Co.</u>, 51 F.3d 1421,

2    1434 (9th Cir. 1995).

3         In opposition, Sherwin Williams contends that it has alleged that there is a dangerous

4    probability that Chip-Mender and Russo will, if successful in their anticompetitive conduct,

5    achieve monopoly power in the relevant market.  Sherwin Williams argues, in essence, that it

6    has adequately alleged this element of the attempted monopolization counterclaim because

7    the counterclaims mention the phrase "dangerous probability of success," and allege that

8    "there is a dangerous likelihood that Chip-Mender and Mr. Russo will succeed in their efforts

9    to monopolize the relevant market."  Sherwin Williams asserts that the filing of the underlying

10   patent infringement suit constitutes an "attempted monopolization" because it was an

11   "attempt" to assert an invalid patent in bad faith.

12        Sherwin Williams also argues that the elements of "barriers to entry" and "capacity of

13   competitors" are not elements that must be pled, but rather factors to be considered on

14   summary judgment or at trial, in order to determine whether a party has proved market power.

15   They note that the Ninth Circuit case cited by Chip-Mender – <u>Rebel Oil</u> – was a summary

16   judgment case, in which the court was looking at whether the plaintiff had established the

17   monopoly power factor.

18        The court agrees with Sherwin Williams that the <u>Rebel Oil</u> factors are not "elements" of

19   a claim of attempted monopolization, which are stated as in <u>Cost Management Services</u>,

20   cited above.  In the court's view, <u>Rebel Oil</u> provides an indication of what facts must be

21   established to prove the element of "dangerous probability of achieving monopoly power."

22   The court nonetheless finds that Sherwin Williams has not alleged facts showing a dangerous

23   probability of success because the only potential for monopoly stated in the counterclaim is

24   the potential that will be realized if Chip-Mender prevails in its patent infringement suit.  At that

25   point, however, there will be no question of antitrust, because a patent-holder in possession of

26   a valid patent cannot be liable for restraining competition.  <u>FMC Corp.</u>, 835 F.2d at 1418 &

27   n.16.

28

United States District Court

For the Northern District of California

1          ii.     antitrust injury

2          Chip-Mender and Russo argue that Sherwin Williams has not attempted to allege

3   antitrust injury.  To state a claim under either section 1 or section 2 of the Sherman Act, a

4   plaintiff must allege antitrust injury – that is, "injury to the market or to competition in general,

5   not merely injury to individuals or individual firms."  McGlinchy, 845 F.2d at 812.

6          Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that

7   flows from that which makes the [antitrust] defendants' acts unlawful."  Brunswick Corp. v.

8   Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977).  An antitrust plaintiff must allege more

9   than simply that the defendant's wrongful behavior directly damaged the plaintiff's business –

10  the plaintiff must also allege that the accused behavior stifled competition.  Unitherm Food

11  Sys., Inc. v. Swift Eckrich, Inc., 375 F.3d 1341, 1361 (Fed. Cir. 2004).

12         Sherwin Williams alleges that it has been injured "to the extent of [its] expenses in

13  countering Chip-Mender's and Mr. Russo's assertion of the patents-in-suit against Sherwin

14  Williams, and in such other ways as the proofs may show."  In other words, Sherwin Williams'

15  only claimed injury arises from its obligation to compensate its attorneys for defending it

16  against Chip-Mender's patent infringement suit.

17         A claim of injury in the form of attorneys' fees in defending against a patent

18  infringement suit is not an injury to "competition" or the type of injury that the antitrust laws were

19  designed to protect against, but is rather a purely individual economic injury to Sherwin

20  Williams that has no effect on competition in the relevant market.  Such allegations are

21  insufficient to state a claim under the Sherman Act.  See Les Shockley Racing, Inc. v. Nat'l Hot

22  Rod Ass'n, 884 F.2d 504, 508 (9th Cir. 1989) (although proof of plaintiffs' allegations of

23  market exclusion and resulting loss of income would establish harm to their business interests,

24  such proof would not show injury to competition in the market as a whole).

25         Sherwin Williams maintains that its position is supported by Handgards, where the

26  Ninth Circuit stated that "[i]n a suit alleging antitrust injury based on a bad faith prosecution

27  theory, it is obvious that the costs incurred in defense of the prior patent infringement suit are

28  an injury which 'flows' from the antitrust wrong."  Handgards, 601 F.2d at 997.

United States District Court

For the Northern District of California

1    The court finds, however, that Sherwin Williams has not adequately alleged antitrust

2    injury.  An antitrust plaintiff must allege more than that the defendant's wrongful behavior

3    directly damaged its business – it must also allege that the accused behavior stifled

4    competition.  The only injury alleged here by Sherwin Williams is its own payment of its

5    attorneys' fees in defending against Chip-Mender's patent claims.

6    The Ninth Circuit's decision in Handgards does not support Sherwin Williams' claim

7    that a litigant's attorneys' fees are sufficient – standing alone – to constitute injury.  The court

8    did not discuss attorneys' fees in the context of what constitutes an antitrust injury, but rather in

9    connection with the question of the trial judge's charge to the jury regarding the types of

10   damages the plaintiff might obtain.  See Handgards, 601 F.2d at 997.  While attorneys' fees

11   may be recoverable as damages in a bad-faith prosecution suit, the plaintiff still needs to

12   prove an "antitrust injury," as that term has been defined by the Supreme Court.

13                       b.    claim of Walker Process fraud

14   Chip-Mender and Russo also contend that Sherwin Williams fails to plead the facts

15   necessary to support the Walker Process counterclaim.  A patentee who brings an

16   infringement action my be subject to antitrust liability for the anti-competitive effects of that suit

17   if the alleged infringer (the antitrust plaintiff) proves that the asserted patent was obtained

18   through knowing and willful fraud.  In Walker Process, the Supreme Court held that in order to

19   strip a patentee of its exemption from the antitrust laws (because a patent is a sort of license

20   for a monopoly), an antitrust plaintiff is first required to prove that the patentee obtained the

21   patent "by knowingly and willfully misrepresenting facts" to the PTO.  Walker Process, 382

22   U.S. at 177.

23   In order to state a counterclaim for Walker Process fraud in a patent infringement

24   action, a counterclaimant must allege attempted enforcement of the patent, that the patent was

25   issued because of fraud upon the PTO, that the attempted enforcement threatened to lessen

26   competition in a relevant antitrust market, and that the counterclaimant suffered antitrust

27   damages, as well as all other elements of attempted monopolization.  Unitherm, 375 F.3d at

28   1355.  Fraud must be alleged in conformance with Federal Rule of Civil Procedure 9(b).

9

1 | Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1069-70 & n.7 (Fed. Cir. 1998)

2 | (representation of a material fact, falsity of the representation, intent to deceive, justifiable

3 | reliance, and injury to the party deceived).  In the context of a patent action, this translates as

4 | 1) a false representation, 2) made with intent to deceive the patent examiner, 3) on which the

5 | examiner justifiably relied in granting the patent, and 4) but for which misrepresentation or

6 | deliberate omission the patent would not have been granted.  See C.R. Bard, Inc. v. M3 Sys.,

7 | Inc., 157 F.3d 1340, 1364 (Fed. Cir. 1998).

8 |       Chip-Mender and Russo argue that Sherwin Williams' sole basis for its claim of fraud

9 | is the assertion that although Russo disclosed the Pentel pocket correction pen as prior art, he

10 | failed to disclose the construction of the pen, the viscosity of the liquid in the pen, and the "fact"

11 | that the liquid in the pen constituted "paint."  Chip-Mender and Russo assert that there is no

12 | legal authority supporting the proposition that it is fraudulent to fail to specifically disclose

13 | certain details of a reference, when the reference itself has been disclosed to the Patent

14 | Office.  They also argue that Sherwin Williams has failed to sufficiently plead intent to deceive,

15 | since the allegations suggest simply that Chip-Mender's actions constituted gross negligence.

16 |       Sherwin Williams responds that it has properly pled Walker Process fraud, by alleging

17 | that Chip-Mender and Russo failed to advise the PTO that the claimed invention was identical

18 | to the Pentel pocket correction pen, and that Russo knew that if he disclosed this information,

19 | the patent would not issue.  Sherwin Williams contends that Russo disclosed the design

20 | patent for the Pentel pocket correction pen, but did not disclose its inner "construction," the

21 | viscosity of the liquid in the pen, or that the liquid constituted "paint."

22 |       The court finds that the motion to dismiss the third counterclaim must be GRANTED.

23 | Sherwin Williams has not properly pled the element of intent because it has not alleged that

24 | Chip-Mender and Russo are attempting to enforce a patent that has been procured by

25 | knowing and willful fraud, and that they have used their fraudulently obtained patent to restrain

26 | competition.  In order to state facts showing that the alleged fraud was "knowing" and "willful,"

27 | Sherwin Williams must allege more than inequitable conduct.  Nobelpharma, 141 F.3d at

28 | 1069.

**United States District Court**
For the Northern District of California

1   Sherwin Williams does not allege that Chip-Mender and Russo failed to disclose a

2   specific reference, or that they obtained the patents-in-suit by concealing a reference.[2]

3   Sherwin Williams has provided no support for the proposition that a patent holder who

4   discloses a reference to the PTO can be found liable for Walker Process fraud solely based

5   on an alleged failure to bring every detail of the disclosed reference to the examiner's

6   attention.  In addition, as previously stated, Sherwin Williams fails to allege facts supporting

7   two of the four elements of a claim of attempted monopolization.

8                    c.      claim of bad-faith enforcement of patent

9        Chip-Mender and Russo contend that Sherwin Williams fails to plead the elements of

10  the claim of bad-faith enforcement of a patent.  To state a claim for a § 2 violation based on

11  the bad faith enforcement of a patent Sherwin Williams must allege that (1) Chip-Mender had

12  actual knowledge that certain patents were invalid; (2) Chip-Mender attempted to enforce

13  these patents with the specific intent to monopolize, attempt to monopolize, or combine with

14  others to monopolize, the relevant market; and (3) Chip-Mender has succeeded in gaining

15  monopoly power, or that a dangerous probability of success exists.   Handgards, 601 F.2d at

16  994-96.

17       Chip-Mender and Russo argue that a patentee's infringement suit is presumed to have

18  been brought in good faith, and that to properly plead a claim for bad-faith litigation under § 2,

19  Sherwin Williams must satisfy the two-part criteria for a claim of sham litigation, by alleging

20  that the patent infringement suit is objectively meritless, such that no reasonable litigant could

21  expect success on the merits; and this baseless lawsuit conceals an attempt to interfere

22  directly with the business relationships of a competitor.

23       Chip-Mender and Russo note that Sherwin Williams alleges that Chip-Mender will

24  presumably achieve market power if it is successful in enforcing its fraudulently obtained

25

26           [2]  As noted above, Sherwin Williams alleges that Chip-Mender and Russo disclosed the
    Pentel design patent – a patent for the outer case or shape of the product – but failed to disclose
27  "highly material information" regarding the inner "construction" of the Pentel pen.   Sherwin
    Williams does not, however, plead with specificity the particular prior art that was allegedly not
28  disclosed.

United States District Court

For the Northern District of California

1  patent – the same allegation as discussed above under "probability of achieving monopoly

2  power."  They assert that these allegations show that the sham litigation claim is predicated on

3  the outcome of the infringement claims on the merits.  They assert that there is no allegation

4  that Chip-Mender will somehow achieve monopoly power if it is unsuccessful in the underlying

5  litigation.  Thus, they argue, because Sherwin Williams has not alleged the use of the litigation

6  process – as opposed to the outcome – as a competitive weapon, they cannot state a claim

7  for attempted monopolization through bad-faith or sham litigation.[3]

8          In opposition, Sherwin Williams argues that it has properly pled "sham litigation"

9  because it alleged that Chip-Mender and Russo knew the patent was invalid when Chip-

10  Mender filed the patent infringement suit.  In the fourth counterclaim, Sherwin Williams alleges

11  that the illustrations in the patents-in-suit are nothing more than a slight cosmetic variation of

12  the applicator depicted in U.S. Patent No. 4,812,071, one of the patents cited as prior art in

13  the application for Chip-Mender's '299 patent.

14          The court finds that the motion to dismiss the fourth counterclaim for bad-faith litigation

15  must be GRANTED.  Sherwin Williams has not alleged the use of the litigation process as a

16  competitive weapon, and also, as discussed above, has not alleged the necessary elements

17  for an antitrust violation.

18          d.      antitrust claims as to Russo

19          Finally, Chip-Mender and Russo argue that the antitrust counterclaims must be

20  dismissed as to Russo.  They argue that the Supreme Court and the Federal Circuit require

21  the enforcement or assertion of the patent as an element necessary to establish antitrust

22  liability in connection with a patent claim.  Here, they contend, Russo is not the owner of the

---

24  [3] Chip-Mender and Russo also contend that sham litigation claims implicate the right to
petition governmental bodies under Noerr-Pennington.  See Eastern Railroad Presidents
25  Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961);  United Mine Workers v.
Pennington, 381 U.S. 657 (1965).  They assert that sham litigation claims are subject to a
26  heightened pleading standard, although they do not seek dismissal of the fourth counterclaim on
the basis that the facts were not pled with sufficient specificity.  The court notes that the Ninth
27  Circuit recently clarified this issue, ruling in Empress LLC v. City and County of San Francisco,
419 F.3d 1052 (9th Cir. 2005), a case involving the application of the Noerr-Pennington doctrine,
28  that the notice pleading standard applies unless the Federal Rules of Civil Procedure require
otherwise.  Id. at 1055-56.

United States District Court

For the Northern District of California

1   patents-in-suit, and therefore cannot be liable under the antitrust counterclaims.

2          Sherwin Williams did not respond to this argument in its opposition brief.  At the

3   hearing, counsel for Sherwin Williams stated that its response had inadvertently been omitted

4   from the brief, and asserted that under Tillamook Cheese & Dairy Ass'n v. Tillamook County

5   Creamery Ass'n, 358 F.2d 115 (9th Cir. 1966), Russo can be liable as an individual for

6   antitrust violations because he is an individual through whom Chip-Mender acts.

7          The court finds that the motion should be GRANTED as to Russo.  While it may be true

8   in an ordinary antitrust action that individual corporate officers, directors, or agents who

9   authorize acts constituting violations of the antitrust laws may be individually liable for

10  participating with the corporation in those violations, that rule has no applicability in the

11  present case.  As Chip-Mender and Russo point out in the letter brief filed at the court's

12  request following the hearing, Tillamook cannot be construed to support a claim of individual

13  liability in the context of a Walker Process or Handgards antitrust claim because those claims

14  include unique elements relating to the enforcement of the patent or patents at issue –

15  elements that can be satisfied only by a patent owner.  Here, as discussed above in

16  connection with the first and second counterclaims for declaratory relief, Russo is not the

17  owner of the patents.  Thus, the rule stated in Tillamook has no applicability in the present

18  case.

19          3.     Business & Professions Code § 17200 counterclaim

20          Chip-Mender and Russo argue that the fifth counterclaim for violation of Business &

21  Professions Code § 17200 should be dismissed for failure to state a claim.  Section 17200

22  prohibits acts of unfair competition, including any unlawful, unfair or fraudulent business

23  practice.  Unlawful practices are any activities that are forbidden by law.  Samura v. Kaiser

24  Foundation Health Plan, Inc., 17 Cal. App. 4th 1284, 1292 (1993).  Unfair acts are those that

25  "offend[ ] an established public policy" or are "immoral, unethical, oppressive, unscrupulous, or

26  substantially injurious to consumers."  Podolsky v. First Healthcare Corp., 50 Cal. App. 4th

27  632, 647 (1996).

28          In the fifth counterclaim, Sherwin Williams alleges that Chip-Mender's silence about the

13

United States District Court

For the Northern District of California

alleged infringement and requested licensing – from May 2003 when it wrote the first letter to Sherwin Williams, to April 2005 when it wrote the second letter asserting patent infringement – allowed Sherwin Williams to infer that Chip-Mender did not intend to enforce the patents-in-suit against Sherwin Williams and to rely on this reasonable inference.  Sherwin Williams asserts that Chip-Mender waited until Sherwin Williams' Dupli-Color Pen line had achieved commercial success before filing this lawsuit, and claims that that delay constitutes an unlawful, unfair, or fraudulent business practice under § 17200.

Sherwin Williams also alleges that Chip-Mender's patent infringement suit is objectively baseless because no reasonable litigant in Chip-Mender's position – i.e., with knowledge of the prior art references cited in Sherwin Williams' September 2, 2005, letter to Chip-Mender – could realistically expect success on a claim of infringement of the patents-in-suit.  Sherwin Williams asserts that the filing of this objectively baseless lawsuit also constitutes unlawful, unfair, or fraudulent business acts or practices under § 17200.

Chip-Mender and Russo argue that Sherwin Williams has failed to properly state a claim for unfair competition under § 17200 because Sherwin Williams has not alleged injury in fact, or a loss of money or property as a result of Chip-Mender's alleged delay in filing the underlying suit.  They assert that under the recently enacted Proposition 64, a party asserting a claim under § 17200 must have suffered injury in fact or have lost money or property as a result of such unfair competition (citing Cal. Const. Art. II, § 10(a); Huntingdon Life Sci., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc., 129 Cal. App. 4th 1228, 1261 (2005)).

They argue further that there is no legal authority supporting a theory that undue delay in filing a lawsuit constitutes unfair competition.  Indeed, they note, patent holders are generally granted a six-year statute of limitations under 35 U.S.C. § 286.  They note that Sherwin Williams is free to assert defenses of laches or estoppel, but that there is no basis for asserting a counterclaim for violation of § 17200 for the asserted delay in filing suit.  They also assert that there is no basis for alleging the § 17200 claim against Russo, as the underlying suit was brought by Chip-Mender, the owner of the patents-in-suit.

In opposition, Sherwin Williams argues that it alleged that Chip-Mender and Russo

14

United States District Court
For the Northern District of California

1   deceived Sherwin Williams into making a substantial investment in commercializing its Dupli-

2   Color product line, believing it was immune from suit under Chip-Mender's patents.  Sherwin

3   Williams also argues that Chip-Mender's decision to file an objectively baseless infringement

4   suit supports the unfair competition claim.

5        The court finds that the motion to dismiss the fifth counterclaim must be GRANTED.

6   There is no legal authority to support the proposition that delay in pursuing licensing

7   discussions or in filing a patent infringement suit constitutes unfair competition.  Moreover, in

8   order to have standing under § 17200, Sherwin Williams must plead both that it suffered an

9   injury in fact and that it lost money or property as a result of unfair competition, neither of which

10  allegations appear in the counterclaim.

11       Sherwin Williams has not identified any act that qualifies as "unlawful" or "fraudulent,"

12  and the court therefore assumes that the § 17200 claim is intended as a claim of "unfair"

13  business practices.  The "unfair" standard is intentionally broad, allowing courts maximum

14  discretion to prohibit new schemes to defraud.  Motors, Inc. v. Times Mirror Co., 102 Cal. App.

15  3d 735, 740 (1980).  Nevertheless, the California Supreme Court has held that in cases

16  between business competitors, "unfair" means "conduct that threatens an incipient violation of

17  an antitrust law, or violates the policy or spirit of one of those laws because its effects are

18  comparable to or the same as a violation of the law, or otherwise significantly threatens or

19  harms competition." Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.

20  4th 163, 187 (1999).  Sherwin Williams has not alleged any conduct by Chip-Mender or Russo

21  that qualifies as "unfair" business activity under § 17200.

22       Finally, as Sherwin Williams appears to have conceded the argument with regard to

23  Russo, the motion to dismiss the § 17200 claim against him is also GRANTED.

24       4.      Business & Professions Code  § 17500 counterclaim

25       Chip-Mender and Russo argue that the sixth counterclaim for violation of Business &

26  Professions Code § 17500 should be dismissed for failure to state a claim.  Section 17500

27  makes it

28       unlawful for any person, . . . corporation . . . , or any employee thereof with intent

1
2
3
4

directly or indirectly to dispose of real or personal property or to perform services . . .  or to induce the public to enter into any obligation relating thereto, to make or disseminate . . .  before the public in this state, . . . in any newspaper or other publication . . . or in any other manner or means whatever . . .  any statement, concerning that real or personal property or those services . . .  which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . .

5   Cal. Bus. & Prof. Code § 17500); Kasky v. Nike, Inc., 27 Cal. 4th 939, 950 (2003).  "To state a

6   claim under either the UCL or the false advertising law, based on false advertising or

7   promotional practices, it is necessary only to show that members of the public are likely to be

8   deceived." Nike, 27 Cal. 4th at 951 (citations and quotations omitted).

9         In the sixth counterclaim, Sherwin Williams alleges that the attempts by Chip-Mender

10  and Russo to license the patents-in-suit and to sell touch-up paint pens, despite the fact that

11  they knew or reasonably should have known that the patents are invalid and unenforceable,

12  constitutes "the dissemination and making of untrue and misleading statements, which by the

13  exercise of reasonable care should have been known to be false or misleading," in violation of

14  § 17500.

15        Chip-Mender and Russo argue that Sherwin Williams has failed to state  a

16  counterclaim for false and misleading statements under § 17500, and that no facts exist to

17  support such a claim.  They also argue that the § 17500 claim against Russo should be

18  dismissed.

19        In opposition, Sherwin Williams argues that falsely asserting that something was

20  patented when in fact the patent was fraudulently obtained and the alleged invention exists in

21  the public domain is "the essence of unfair competition."  Sherwin Williams also contends, in

22  response to the argument that it has not alleged that Chip-Mender and Russo made false

23  statements in an attempt to dispose of personal property, that a patent is personal property,

24  and thus they have stated a claim.

25        The court finds that the motion to dismiss the sixth counterclaim for violation of

26  § 17500 must be GRANTED.  In order to state a claim under § 17500, Sherwin Williams must

27  allege facts showing that Chip-Mender and Russo made untrue or misleading statements, with

28  the intent "to dispose . . . of real or personal property or to perform services . . . or to induce

16

United States District Court

For the Northern District of California

1   the public to enter into any obligation relating thereto." <u>Bernardo v. Planned Parenthood Fed.</u>

2   <u>of America</u>, 115 Cal. App. 4th 322, 356 (2004), <u>cert. denied</u>, 125 S.Ct. 373 (2004).  In

3   addition, Sherwin Williams must allege that members of the public are likely to be deceived.

4   <u>Committee on Children's Television, Inc. v. Gen'l Foods Corp.</u>, 35 Cal. 3d 197, 211 (1983).

5   Sherwin Williams has not alleged facts that meet these elements.

6          None of the allegedly false statements asserted by Sherwin Williams in the sixth

7   counterclaim constitutes false advertising under § 17500.  The licensing proposals do not

8   qualify as "advertisements" regarding the proposed disposition of "real or personal property"

9   or the performance of services.  With regard to the sale of the pens, Sherwin Williams has not

10   identified anything untrue or misleading in Chip-Mender's advertisements on its websites.

11   The website simply states that the Chip-Mender products are patented, a true statement.

12   Sherwin Williams cannot dispute Chip-Mender's statements that its paint pens are patented.

13   Until there is a finding that the patents-in-suit are invalid, any statement made by Chip-Mender

14   to the effect that its products are patented is true.

15          Finally, as Sherwin Williams appears to have conceded the argument with regard to

16   Russo, the motion to dismiss the § 17500 claim against him is GRANTED.

17          5.      Ohio deceptive trade practices counterclaim

18          Chip-Mender and Russo argue that the seventh counterclaim for violation of the Ohio

19   Deceptive Trade Practices Act should be dismissed for failure to state a claim.  The

20   Deceptive Trade Practices Act prohibits a variety of unfair and deceptive trade practices.

21   <u>See</u> Ohio Rev. Code § 4165.02.

22          In the seventh counterclaim, Sherwin Williams alleges that Chip-Mender and Russo

23   violated Ohio's Deceptive Trade Practices Act by attempting to license the patents-in-suit

24   despite knowing that they were invalid and unenforceable, and by using the patents-in-suit to

25   sell Chip-Mender's touch-up paint pens, despite knowing that they were invalid and

26   unenforceable.  These allegations are identical to the ones Sherwin Williams made in the sixth

27   counterclaim for violation of Business § Professions Code § 17500.

28          Chip-Mender and Russo argue that this claim fails for the same reasons as the

17

United States District Court

For the Northern District of California

1    § 17500 claim.  In addition, they contend that Ohio Rev. Coce § 4165.02, which defines the

2    conduct prohibited under the Act, does not list any unlawful activities that resemble Sherwin

3    Williams' licensing allegations.  With regard to the claim that Chip-Mender violated the Ohio

4    statute by falsely referring to its products as "patented" or "protected by U.S. patents," Chip-

5    Mender and Russo submit that it is not clear which subsection of Ohio Rev. Code § 4165.02, if

6    any, would encompass such charges.  They add, however, that the statements were not false,

7    as Chip-Mender's paint pens are covered by U.S. patents.

8           Finally, Russo argues that the claim under the Ohio law should be dismissed as to him,

9    for the same reasons as the claim under § 17500.

10          In opposition, Sherwin Williams asserts that it has stated a claim for violation of Ohio

11   Rev. Code § 4165.02(A)(7), which creates liability when a company or employee "[r]epresents

12   that goods or services have . . . characteristics . . . that [they] do[ ] not have

13   . . . " Sherwin Williams contends that it alleged that Chip-Mender and Russo, with knowledge

14   that the patents-in-suit were fraudulently obtained, have attempted to license those patents

15   and sell their products as "patented," thus improperly conveying the notion that the patents are

16   valid and enforceable.

17          The court finds that the motion to dismiss the seventh counterclaim must be

18   GRANTED.  As with the § 17500 claim, until there is a finding that the patents-in-suit are

19   invalid, any statement made by Chip-Mender to the effect that its products are patented is true.

20          In addition, as Sherwin Williams appears to have conceded the argument with regard

21   to Russo, the motion to dismiss the claim against him must be GRANTED.

22   C.     Alternative Motion to Bifurcate and Stay

23          In the alternative, Chip-Mender and Russo argue that the court should bifurcate the

24   counterclaims, and stay discovery related to the third through seventh counterclaims pending

25   resolution of Chip-Mender's patent infringement claims.

26          Federal Rule of Civil Procedure 42(b) provides that the court may order a separate trial

27   of claims, counterclaims, or issues "in furtherance of convenience or to avoid prejudice, or

28   when separate trials will be conducive to expedition and economy." Fed. R. Civ. Proc. 42(b);

1   see also Ellingson Timber Co. v. Great N. Ry. Co., 424 F.2d 497, 499 (9th Cir.1970) ("One of

2   the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery

3   proceedings pending resolution of potentially dispositive preliminary issues.")

4       As the parties seeking bifurcation, Chip-Mender and Russo have the burden of proving

5   that bifurcation is justified given the facts in the case.  See Spectra-Physics Lasers, Inc. v.

6   Uniphase Corp., 144 F.R.D. 99, 101 (N.D. Cal. 1992).  Chip-Mender and Russo argue that

7   each of the antitrust and related claims depends upon the resolution of the underlying patent

8   claims, and that if the underlying claims are resolved in Chip-Mender's favor, the

9   counterclaims will become moot.  Chip-Mender and Russo also argue that granting bifurcation

10  will avoid the prejudice of delay, caused by the need to develop the record on the antitrust and

11  related claims; will avoid confusion of the issues (confusion of the jury caused by mixing

12  antitrust and patent claims in same trial); will serve judicial economy by resolving certain

13  threshold issues raised by antitrust and related claims; and will not prejudice Sherwin

14  Williams.

15      In opposition, Sherwin Williams argues that bifurcation would be improper, because

16  Chip-Mender has not established that a consolidated trial would be unduly burdensome.  In the

17  alternative, Sherwin Williams contends that the court should at least allow discovery to

18  proceed on all issues, and decide later whether to bifurcate the patent claims and the

19  counterclaims for trial.  Sherwin Williams asserts that denying the stay and the bifurcation will

20  further judicial economy because there is substantial overlap between the patent claims and

21  the counterclaims – e.g., the same issue of fraud will have to be litigated for the inequitable

22  conduct defense, the patent misuse affirmative defense, and the antitrust counterclaims.

23  Sherwin Williams submits that there will be no efficiency to be gained by conducting discovery

24  and adjudicating the fraud issues for inequitable conduct and patent misuse (along with

25  antitrust violations alleged in the patent misuse defense), and then undertaking separate

26  discovery and adjudication for the antitrust counterclaims.

27      It is a common practice in federal court to stay antitrust counterclaims until after the trial

28  of the invalidity issue.  See, e.g., In re Innotron Diagnostics, 800 F.2d 1077, 1084 (Fed.

1    Cir.1986) (discussing the "now-standard practice of separating for trial patent issues and

2    those raised in an antitrust counterclaim").  On balance, having considered the potential

3    prejudice to Sherwin Williams, along with the other relevant factors, the court finds that the third

4    through seventh counterclaims should be bifurcated, and that discovery on those

5    counterclaims should be stayed, because the benefits to be derived from a stay will outweigh

6    any prejudice.  Proceeding on the antitrust claims simultaneously with the patent claims may

7    delay resolution of the case by increasing its complexity, whereas many issues will likely be

8    mooted by addressing the patent claims first.  Resolution of the invalidity issue (Sherwin

9    Williams' third affirmative defense, and first and second counterclaims) may dispose of the

10   antitrust counterclaims altogether.

11       The stay will remain in effect at least until any motions for summary judgment have been

12   decided on the patent claims.  At that point, the court will revisit the question, and will

13   determine whether to maintain the stay through the trial of the patent claims.

**CONCLUSION**

15       In accordance with the foregoing, the motion to dismiss the counterclaims asserted

16   against Russo is GRANTED.  The dismissal is WITH PREJUDICE.

17       The motion to dismiss the third through seventh counterclaims against Chip-Mender is

18   GRANTED.  The dismissal is WITH LEAVE TO AMEND.  Any amended counterclaims shall

19   be filed no later than February 1, 2006.

20       The motion to bifurcate the third through seventh counterclaims, and to stay discovery

21   as to those counterclaims is GRANTED, as indicated above.  Should Sherwin Williams

22   amend the counterclaims, the time for Chip-Mender to file a responsive pleading or motion to

23   dismiss shall not begin to run until after the stay has been lifted.

25   **IT IS SO ORDERED.**

26   Dated: January 3, 2006

27                                                     _____
                                                      PHYLLIS J. HAMILTON
                                                      United States District Judge

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28